680 A.2d 1145

Charles W. McNEIL and Edith McNeil, H/W, Appellees,

v.

OWENS–CORNING FIBERGLAS CORPORATION, Appellant.

Supreme Court of Pennsylvania.

Submitted March 15, 1996.

Decided July 31, 1996.

W. Matthew Reber, Robert N. Spinelli, Catherine N. Jasons, Philadelphia, for Owens–Corning Fiberglas Corp.

Charles A. Klein, George W. Howard, III, Philadelphia, for C.W. and E. McNeil.

Before NIX, C.J. and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION*

NEWMAN, Justice.

Owens Corning (formerly known as Owens-Corning Fiberglas Corporation) appeals from the April 11, 1995 Order of the Superior Court that vacated the judgment of the Philadelphia Court of Common Pleas (trial court) and remanded for a new trial.

Charles W. and Edith McNeil, husband and wife (individually, Mr. McNeil and Mrs. McNeil; collectively, Appellees), commenced this asbestos-related personal injury action following occupational injuries suffered by Mr. McNeil. The complaint, filed in the trial court on November 8, 1985, sought damages for non-malignant conditions allegedly caused by Mr. McNeil's occupational exposure to the asbestos-containing products of many named defendants. Specifically, these non-malignant conditions included pleural thickening, asbestosis, and restrictive lung disease. When the case went to trial, the only remaining defendant was Owens Corning (formerly known as Owens–Corning Fiberglas Corporation), all other defendants having settled, been dismissed or filed for bankruptcy.

Consistent with the standard practice for asbestos-related personal injury actions tried in the trial court, the case was reverse-bifurcated with issues of medical causation and damages comprising the first phase of trial, and, if necessary, issues of liability constituting the second phase of trial.

After the filing of the complaint, but prior to trial, Mr. McNeil was diagnosed with squamous cell lung cancer. At trial, Appellees contended that in addition to the non-malignant conditions, asbestos exposure also caused the lung cancer. In addition, Appellees presented evidence at trial of restriction in Mr. McNeil's activities before his lung cancer diagnosis, which Appellees claimed was attributable to the separate, non-malignant conditions. Defense expert Theodore Rodman, M.D. agreed that Mr. McNeil had lung cancer, but testified that his malignancy was not asbestos-related, but was

attributable solely to cigarette smoking.[1]  Dr. Rodman further testified that Mr. McNeil did not have pulmonary asbestosis, but did have very mild pleural thickening, which did not cause any symptoms.

The trial court submitted a special verdict slip to the jury consisting of four questions, one on causation, the other three on damages, with the first question asking: "Do you find by a fair preponderance of the evidence that exposure to asbestos was a substantial contributing factor in the development of Mr. McNeil's lung cancer?"  The jury answered "no" to this question and, therefore, did not reach the remaining three questions on damages.

Judgment was entered against Appellees and in favor of Owens Corning.  By Order dated May 5, 1993, the trial court denied Appellees' Motion for a New Trial.  McNeil appealed to the Superior Court, claiming that the verdict sheet submitted by the trial court improperly precluded an award of damages for Appellees' alleged non-malignant asbestos-related injuries.

On April 11, 1995, the Superior Court filed an Order and accompanying Opinion vacating the trial court judgment and remanding for a new trial.  The Superior Court held that the trial court should have permitted the jury to consider conditions other than cancer in determining whether Appellees were entitled to damages.  Judge Olszewski filed a Concurring and Dissenting Opinion, agreeing with the majority's conclusion that Appellees should be permitted to pursue a claim for Mr. McNeil's non-malignant conditions, but emphasizing that the new trial should be strictly limited to those non-cancer claims.

---

1.  Dr. Rodman testified that the cell type of an asbestos-related tumor is more likely to be an adenocarcinoma, while Mr. McNeil's tumor was a squamous cell carcinoma.  Further, Dr. Rodman testified that individuals who experience an occupational exposure to asbestos have an increased risk of developing asbestos-related lung cancer only if they first develop pulmonary asbestosis.  Dr. Rodman's review of the information regarding test results and physician's examination's of Mr. McNeil indicated no evidence of pulmonary asbestosis.  Notes of Testimony, March 8, 1993, Deposition of Dr. Rodman, at 15–16.

Owens Corning filed a timely Petition for Panel Reconsideration and/or Clarification of the Superior Court's Order to the extent that the Order would allow Appellees to re-litigate the lung cancer claim. On June 6, 1995, the Superior Court entered a per curiam Order denying the Motion for Panel Reconsideration, stating that the case was to be remanded to the trial court on all issues. On December 15, 1995, this Court granted Owens Corning's Petition for Allowance of Appeal. The issue before us is whether the Superior Court erred in granting Appellees a new trial on both the claims of cancer and non-cancer asbestos related injuries. For the following reasons, we reverse in part and affirm in part.

Under the doctrine of res judicata issue preclusion,[2] when an issue of fact or of law is actually litigated and determined by a valid final judgment, and determination of the issue was essential to judgment, the determination on that issue is conclusive in a subsequent action between the parties, whether on the same or a different claim. *Clark v. Troutman*, 509 Pa. 336, 502 A.2d 137 (1985). As we have noted in our cases, issue preclusion serves the twin purposes of protecting litigants from assuming the burden of re-litigating the same issue with the same party, and promoting judicial economy through preventing needless litigation. *Id.*

Clearly, the cancer and non-cancer diseases in the current case constitute separate claims. Pennsylvania courts

**2.** "Res judicata" means "a thing adjudged" or a matter settled by judgment. Traditionally, American courts have used the term res judicata to indicate claim preclusion, i.e., the rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and constitutes for them an absolute bar to a subsequent action involving the same claim, demand or cause of action. *See, e.g., Matchett v. Rose*, 36 Ill.App.3d 638, 344 N.E.2d 770 (1976). This is distinguished from the traditional doctrine of collateral estoppel, or issue preclusion, which holds that when a particular issue has already been litigated, further action on the same issue is barred. *See, e.g., City of St. Joseph v. Johnson*, 539 S.W.2d 784 (Mo.App.1976). We have interpreted the "modern doctrine of res judicata" as incorporating both claim preclusion, or traditional res judicata, and issue preclusion, or traditional collateral estoppel. *See, e.g., Foster v. Mutual Fire, Marine and Inland Insurance Company*, No.s 13, 24 and 74 M.D. Appeal Docket 1991 (Supreme Court of Pennsylvania, May 22, 1996).

have consistently recognized the medical distinctions between malignant and non-malignant asbestos-related injuries. In *Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992), the Superior Court held that a claim for an asbestos-related cancer constitutes a separate cause of action from injuries stemming from non-malignant conditions. In *Marinari*, the court observed that each disease alleged (i.e., pulmonary disease, lung cancer and mesothelioma) is a separate and distinct disease. This Court explicitly recognized the holding in *Marinari* recently in *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996). Justice Zappala, writing for the Court noted:

> The court in *Marinari* was not specifically presented with the issue of whether pleural thickening, absent physical impairment, is sufficient to sustain a cause of action. We conclude, however, that the natural extension of *Marinari* is to preclude an action for asymptomatic pleural thickening since Appellants are permitted to commence an action when the symptoms and physical impairment actually develop.

*Id.* at 675, 674 A.2d at 237 (footnote deleted).

Here, the error found by the Superior Court was related not to the cancer claim decided by the jury, but to the separate non-cancer claims excluded from the jury's verdict sheet. The same parties fully tried McNeils' lung cancer claim, and a competent jury has determined that Appellees are not entitled to damages from Owens Corning for that claim. The conditions necessary to apply the doctrine of res judicata issue preclusion are present. Appellees are therefore barred from re-litigating the separate lung cancer claim.

■■■■ This Court has consistently held that where the only trial errors disclosed in the record deal with specific and discrete issues, the grant of a new trial should be limited to those issues. In *Messer v. Beighley*, 409 Pa. 551, 187 A.2d 168 (1963), this Court held that where errors deal exclusively with damages, the new trial should be limited to damages. Likewise, in *McKniff v. Wilson*, 404 Pa. 647, 172 A.2d 801 (1961), we held that since the only meritorious assignments of error

involved damages, retrial should concern that issue alone. *See also Richardson v. LaBuz,* 81 Pa.Cmwlth. 436, 474 A.2d 1181 (1984) (limiting grant of new trial to the statute of limitations issue where the defendant's negligence was fully and fairly litigated); and *Hose v. Hake,* 412 Pa. 10, 192 A.2d 339 (1963) (limiting new trial to the issues of damages). The new trial ordered in the instant case, therefore, should be limited to the non-cancer claims, the lung cancer claim having already been fully litigated and resolved by a jury.

In addition, Appellees bring the novel argument that the trial court decision should be reversed and a new trial awarded on all issues because the trial court failed to instruct the jury as to the meaning of the phrase "reasonable medical certainty." [3] Appellees maintain that in failing to include this definition in the jury instructions, the trial court deprived Appellees of a fair trial on the lung cancer claim.

A specific objection must be made to preserve a claim of objectionable jury charge. *Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595 (1981). *See also* Pa.R.A.P. 302(b) (requiring that a specific exception to the language or omission complained of be made to the trial court to preserve an issue for appeal); and Pa.R.A.P. 2117(c) and 2119(e) (requiring that a party's brief expressly set forth in both the statement of the case and in the argument a reference to the place in the record where the issue presented for decision on appeal has been raised or preserved below). We note upon review that, at trial, Appellees failed to lodge a specific objection to the jury charge with respect to the court's definition of Appellees' burden of proof. Appellees have further failed to satisfy the requirements of

---

3. In their proposed points for charge, the Appellees asked that the trial judge charge the jury on what it means when a medical expert opines to a "degree of medical certainty." The judge declined to include that proposed point for charge. Citing *Dallas v. Burlington Northern, Inc.,* 212 Mont. 514, 689 P.2d 273 (1984), McNeil offers a definition of that phrase as "the medical expert believes that it is more likely to be true than it is unlikely to be true that his diagnosis or other opinion he is giving is correct." McNeil suggests that the definition used in *Dallas v. Burlington* should have been adopted by the trial court in its jury charge.

Rules 2117(c) and 2119(e) in this regard. They therefore waive this issue.

Accordingly, we reverse the Superior Court's Order to the extent that it allowed a new trial on the lung cancer claim, and affirm the grant of a new trial limited only to the non-cancer injury claims.

NIGRO, J., concurs in the result only.