Derl PULLIAM III, Appellant,

v.

Deborah G. FANNIE T/D/B/A Bakerstown Hotel, Deborah G. Fannie, Bakerstown Bar, Bakerstown Hotel and Clinton Township, Appellees.

Superior Court of Pennsylvania.

Argued Nov. 19, 2003.

Filed April 14, 2004.

Reargument Denied June 21, 2004.

Robert E. Mielnicki, Pittsburgh, for appellant.

James W. Gicking, Philadelphia, for Bakerstown Bar, Bakerstown Hotel and Fannie, appellees.

Before: STEVENS, ORIE MELVIN and CAVANAUGH, JJ.

OPINION BY CAVANAUGH, J.:

¶ 1 Derl Pulliam, III, was intoxicated when he failed to negotiate a turn while driving on Anderson Road in Clinton Township, Butler County. Mr. Pulliam was the sole occupant of the vehicle and suffered a traumatic spinal cord injury as a result of the accident. He filed a lawsuit against the Bakerstown Hotel and its owner, claiming that the defendants were liable for his damages under Pennsylvania's Dram Shop Act, 47 P.S. §§ 4–493, because they served him alcoholic beverages while he was visibly intoxicated, proximately causing his injuries. He appeals from judgment entered following a jury verdict

in favor of defendants/appellees and the court's denial of post-trial motions. After careful review, we affirm.

¶ 2 The facts, as gleaned from the record, show that appellant and a female companion, Temple McAlhany, arrived at the Bakerstown Hotel bar at approximately 10 p.m. on Thursday, June 25, 1998. Over the next hour and forty-five minutes, appellant consumed a number of alcoholic beverages. At approximately 11:45 p.m., he and Ms. McAlhany left the bar and appellant drove Ms. McAlhany home. Sometime thereafter, appellant was involved in a single car accident on Anderson Road which left him paralyzed below his mid-chest.[1]

¶ 3 The trial testimony regarding the amount of alcohol appellant consumed at the bar was conflicting. Appellant testified that he consumed 20 to 24 drinks. Specifically, appellant testified that he drank 10 to 12 "shots" of a potent liquor and 10 to 12 bottles of beer.[2] Ms. McAlhany, on the other hand, testified that appellant drank "maybe half a dozen" bottles of beer and "at least a few" shots of liquor.

¶ 4 The testimony regarding appellant's appearance of intoxication on the night in question was conflicting as well. Appellant testified that he was slurring his speech, spilling his drinks, staggering and bumping into objects while walking and that he had difficulty driving Ms. McAlhany home.

¶ 5 Ms. McAlhany testified, in pertinent part, as follows:

1. Appellant did not know what time the accident occurred. His shouts for help were heard by a neighbor who found him lying outside the car, one hundred feet down an embankment from the roadway at approximately 4:30 a.m. A trauma helicopter arrived at the scene at approximately 6:15 a.m. and appellant was transported to Allegheny General Hospital shortly thereafter. A blood sample drawn at 7:11 a.m. showed appellant's blood alcohol content to be .11.

2. The liquor was 99 proof, or 49.5% alcohol by volume. The beer was served in 12 oz. bottles.

Q. ...[D]id you observe Derl in any way stagger, stumble, fall, run into tables, nearly knock over glasses, any behavior of that type?

A. No.

Q. Did you observe him loud, boisterous, argumentative in any fashion with either yourself or anybody in the bar?

A. No.

Q. Did you ever see him not be able to pay the bartenders, drop his change on the floor, anything relative to ordering at the bar itself?

A. No.

Q. Did you ever observe him walk that evening?

A. I believe so, yes.

Q. All right. Did you ever see him stagger or stumble–

A. No.

Q. –when he did walk?

A. I don't remember.

Q. How about his ability to converse with you, could you understand him?

A. Yes.

Q. Were the two of you talking that evening–

A. Yes.

Q. –and talking quite a bit?

A. Uh–hum.

Q. Ever a problem with his slurring his words or thick lipped or inability to talk to you?

A. No.

Q. Ever have a problem understanding?

A. No.

Q. When the two of you leave, did you make any comment to him about driving?

A. When we first pulled out, he pulled out fast. And I told him—I told him to slow down, and that was it. He drove fine the rest of the way.

N.T. 7/11/02 at 30–31.

¶ 6 Two expert toxicology witnesses testified at trial that if appellant had consumed 20 to 24 drinks during the stated time period, he would have exhibited signs of severe inebriation. Appellant's expert, David A. Johnson, M.D., testified that "in my opinion, if Mr. Pulliam had ingested all that alcohol, I would be amazed that he could walk out the door." N.T. 7/8/02 at 100. Defense expert, Eric W. Fine, M.D., testified that having 24 drinks in the space of two hours would raise a person's blood alcohol content to approximately .40 and that the person would likely be "in a state of virtual coma, unable to stand, literally falling down in a drunken stupor[,]" and in "very real danger of death ... from alcohol poisoning." N.T. 7/11/02 at 203.

¶ 7 At trial it was shown that a urine specimen collected from appellant in the hospital emergency room after the accident was positive for metabolites of marijuana and cocaine. Appellant admitted at trial that he had taken both drugs in the past, but denied ingesting any drugs for at least two days prior to the accident. At trial it was additionally shown that appellant, who was twenty-two years old at the time of the accident, had a history of polysubstance abuse which required treatment during his teenage years and that appellant was twice convicted of DUI as an adult.

¶ 8 A "life-flight" medical chart, three pages in length, handwritten by emergency medical personnel, was permitted to be viewed by the jury during their deliberations. A statement within the chart that appellant was not wearing restraints at the time of the accident was redacted before the chart was given to the jury.

¶ 9 During trial, defense counsel asked Ms. McAlhany whether appellant was

wearing a seatbelt at the time he drove her home from the Bakerstown Hotel. Appellant's counsel objected and requested a mistrial. Following a side-bar conference with counsel, conducted out of the hearing of the jury, the judge overruled the objection and denied the mistrial request. The question was again posed and Ms. McAlhany answered "I don't remember."

¶ 10 The jury returned a verdict in favor of the defendants. Post-trial motions for a new trial were denied and judgment was entered on the verdict. Appellant now appeals and raises five issues:

I. WHETHER THE TRIAL COURT ERRED IN COMPELLING APPELLANT TO TURN OVER RECORDS OF DRUG REHABILITATION RECEIVED BY APPELLANT AT AGE SIXTEEN (16) PURSUANT TO A DISPOSITION OF THE BUTLER COUNTY COURT OF COMMON PLEAS, JUVENILE DIVISION?

II. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE ARRESTS OF APPELLANT FOR DUI AND REHABILITATION BY APPELLANT AS A JUVENILE FOR POTENTIAL SUBSTANCE ABUSE?

III. WHETHER THE TRIAL COURT ERRED WHEN IT PERMITTED APPELLEE TO INTRODUCE EVIDENCE OF THE PRESENCE OF COCAINE AND MARIJUANA IN A SAMPLE OF APPELLANT'S URINE TAKEN AFTER THE ACCIDENT?

IV. WHETHER THE TRIAL COURT ERRED WHEN IT PERMITTED "LIFE–FLIGHT" RECORDS, PORTIONS OF WHICH WERE DISCUSSED DURING THE TESTIMONY OF ONE OF APPELLANT'S EXPERTS BUT CONTAINED HEARSAY AND PREJUDICIAL INFORMATION NOT DISCUSSED BEFORE THE JURY TO GO OUT WITH THE JURY DURING DELIBERATIONS?

V. WHETHER THE TRIAL COURT ERRED WHEN IT ADMITTED EVIDENCE THAT APPELLANT WAS NOT WEARING A SEATBELT A SHORT TIME BEFORE THE ACCIDENT?

¶ 11 Our standard of review is well-settled:

This court will not reverse a trial court's decision regarding the grant or refusal of a new trial absent an abuse of discretion or an error of law. . . . Further if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining party. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment.

*Antoniotti v. Eckels,* 840 A.2d 1013, 1015 (Pa.Super.2003) (quoting *Yacoub v. Lehigh Valley Med. Assocs., P.C.,* 805 A.2d 579, 586 (Pa.Super.2002) (*en banc*)).

¶ 12 We will treat appellant's first three issues together and initially note that the trial court permitted the introduction of evidence at trial of appellant's juvenile drug rehab treatment, adult DUI convictions and the fact that metabolites of marijuana and cocaine were found in his urine at the time of the accident, upon determination that the evidence was relevant and material to the issue of appellant's tolerance to alcohol as well as to the issue of his life expectancy.

■ ¶ 13 Appellant first claims that the court erred in granting appellees' motion to compel production of his juvenile drug rehab records. Appellant alleges that the information contained in those records was confidential and privileged. He supports

his claim by citation to the Juvenile Act at 42 Pa.C.S.A. § 6352.1, which provides that notwithstanding any other provision of law, the drug treatment records of a child who has been adjudicated dependent or delinquent shall be released only upon consent to the county agency, court or juvenile probation officer, who shall not release those records to any other person. Appellant also cites various federal regulations which set forth confidentiality privileges in drug and alcohol treatment records.

¶ 14 Upon careful review, we conclude that appellant's claim is meritless.[3] In *Kraus v. Taylor*, 710 A.2d 1142, 1144–45 (Pa.Super.1998), *appeal dismissed as improvidently granted*, 560 Pa. 220, 743 A.2d 451 (2000), this court held that by filing a lawsuit for permanent personal injury, a plaintiff impliedly waives, among other things, statutory privileges relating to confidentiality of drug and alcohol treatment records. Moreover, as the trial court correctly pointed out, the federal regulations, by their own terms, permit disclosure of otherwise confidential treatment records upon a showing of "good cause." *See* 42 U.S.C.S. § 290dd–2(b)(1)(C); *see also Mulholland v. Dietz Co. & Entwistle Corp.*, 896 F.Supp. 179 (E.D.Pa.1994) (privilege of confidentiality in drug and alcohol treatment records not absolute; disclosure of such records allowed upon a finding of "good cause;" filing of a lawsuit may constitute "good cause" where the claim implicates plaintiff's physical or mental condition). Here, the court, on the basis of the holding in *Kraus*, as well as on pertinent federal statutory provisions and decisional precedent, concluded that appellant impliedly waived any privilege of confidentiality in his drug and alcohol treatment records. We find that determination to be proper and we see no abuse of discretion.

¶ 15 Moreover, we reject appellant's claims that the drug rehab evidence, DUI evidence and the evidence that his urine tested positive for marijuana and cocaine should have been excluded at trial on the basis of unfair prejudice. The court found that the evidence was highly probative of appellant's life expectancy and his tolerance to intoxicants. These factors were squarely at issue in this trial for damages on allegations that appellees negligently over-served intoxicating beverages to appellant resulting in permanent injury.[4]

¶ 16 In *Kraus v. Taylor, supra*, an intoxicated pedestrian was struck by a vehicle and sued the vehicle's driver for serious, permanent injury. The pedestrian, who had a long history of alcohol and drug abuse, objected to the admission into evidence of his drug and alcohol history. The court admitted the substance abuse history evidence and on appeal, the pedestrian claimed the court erred in doing so because the probative value of the evidence was outweighed by its prejudicial impact. We disagreed as follows:

> The balancing of potential prejudice against probative value is within the sound discretion of the trial court. [*Sprague v. Walter*, 441 Pa.Super. 1, 656 A.2d 890, 909 (1995)] We agree that the

---

**3.** We note that the record contains no conclusive showing that appellant was, in fact, adjudicated dependent or delinquent or that his admission into drug rehab was a condition of a sentence of juvenile probation. We cannot presume that the Act's protections, which, we conclude, are not absolute in any event, inure to him based on a bare allegation only.

**4.** Indeed, appellant presented expert evidence in his case-in-chief estimating his life expectancy, under optimal care, as extending into the septuagenarian years as well as lay and expert testimony tending to show that he was not particularly physiologically tolerant of intoxicants.

evidence of appellant's chronic drug and alcohol abuse was highly prejudicial. *See generally Commonwealth v. Gaddy*, 468 Pa. 303, 310–312, 362 A.2d 217, 220–21 (1976) (discussing the prejudicial effect of drug use testimony). As discussed above, however, the evidence is also highly probative of appellant's life expectancy. Accordingly, admission of the evidence was well within the court's sound discretion.

*Id.*, 710 A.2d at 1144.

¶ 17 Here, we similarly find that the court committed no abuse of discretion in permitting evidence to be presented of appellant's drug and alcohol abuse history, his DUI convictions and the fact that his urine tested positive for marijuana and cocaine. The evidence was highly probative of issues raised in this Dram Shop liability case and was not, we conclude, unfairly prejudicial.

■ ¶ 18 Appellant next asserts that the court erred when it allowed the "life-flight" medical chart to go out with the jury during its deliberations because the chart "included numerous hearsay statements, possibly involving several levels of hearsay about matters such as time of the accident and the fact that appellant was not wearing a seatbelt." The record shows that appellant objected at trial to the chart's publication to the jury during deliberations because the chart contained a statement referencing his failure to use a seatbelt. The court redacted the reference and appellant had no further objection. Thus, we conclude that the instant vague complaint that the chart contained unspecified additional inadmissible hearsay information is waived. *See* Pa.R.A.P. 302 (issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

■ ¶ 19 Appellant also claims that the court erred in permitting Ms. McAlhany to testify as to whether or not she remembered if appellant was wearing a seatbelt when he drove her home. In support of his allegation, appellant relies on 75 Pa. C.S.A. § 4581(e), which provides, in pertinent part, that "in no event shall a violation or alleged violation of this subchapter [requiring the use of seatbelts] be used as evidence in a trial of any civil action[.]" There is no ambiguity in the statute which sets forth an absolute prohibition against the introduction of such evidence and thus, we conclude that the court's evidentiary ruling permitting inquiry into the matter was error. Clearly, the better course of action would have been to sustain the objection and to prohibit the witness from answering the question posed.

■ ¶ 20 We find, however, that the error was harmless because the witness answered that she did not remember whether appellant wore a seatbelt. No violation of the statute was actually established nor, we conclude, impermissibly suggested. Thus, we conclude that the verdict was unaffected by the error. *See Yacoub v. Lehigh Valley Med. Assocs., P.C.*, 805 A.2d 579, 586 (Pa.Super.2002) (*en banc*) (erroneous evidentiary ruling which does not affect verdict is harmless). Because the error was harmless, the denial of the motion for a new trial was proper. *Drum v. Shaull Equip. & Supply Co.*, 787 A.2d 1050, 1059 (Pa.Super.2001) (the harmless error doctrine underlies every decision to grant or deny a new trial; the moving party must demonstrate that he has suffered prejudice from the mistake).

¶ 21 The judgment is affirmed.