Robert CARPINET and Susan
Carpinet, H/W, Appellee

v.

Darlene MITCHELL, Appellant.

Superior Court of Pennsylvania.

Argued March 19, 2003.
Filed May 27, 2004.
Reargument Denied Aug. 6, 2004.

Joseph A. Murphy, Scranton, for appellant.

Melissa A. Scartelli, Scranton, for appellees.

Before: STEVENS, BOWES, and CAVANAUGH, JJ.

CAVANAUGH, J.:

¶ 1 This matter arises out of an automobile accident in which appellee, Robert Carpinet, sustained a whiplash injury to his neck when his vehicle, a full size Ford F–150 pick-up truck was rear-ended by a compact Geo Tracker sports utility vehicle driven by appellant, Darlene Mitchell. Carpinet and his wife filed suit, seeking damages for his personal injuries and her loss of consortium. The jury returned a verdict in favor of the Carpinets, awarding them an aggregate total of $650,000 in damages. Delay damages of $132,159.24 were added thereto by stipulation of the parties. Ms. Mitchell appeals from the judgment entered[1] and claims, among many other things, that the trial court erroneously charged the jury on damages and abused its discretion in permitting the use of a prejudicial jury verdict interroga-

---

1. We have corrected the caption to reflect that Ms. Mitchell's appeal is from judgment entered on the record, not from the order denying her motion for post-trial relief. *See* *Mackall v. Fleegle*, 801 A.2d 577, 580 (Pa.Super.2002); *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 513 (1995) (*en banc*).

tory. After careful review, we agree that the verdict interrogatory and the court's charge on damages upon which the interrogatory was based, improperly permitted the jury to consider a number of categorized misfortunes, such as "loss of the pleasures and enjoyments of life" and the "loss of feeling of well-being," as separate, compensable items of damages apart from the damages available for pain and suffering. We conclude that these items of loss are more properly seen as subdivisions of pain and suffering and do not set forth separate categories of damages recognized by law which may be tabulated in addition to damages awarded for pain and suffering. Accordingly, we vacate the award of damages and award a new trial limited to damages.

¶ 2 The relevant facts, as gleaned from the record, show that the accident occurred on July 1, 1996, on a straight, dry, level portion of River Road, in Plains Township, Luzerne County. The weather was sunny and clear. Mitchell's vehicle was traveling approximately one to one-and-a-half vehicle lengths behind Carpinet's vehicle, which was traveling approximately twenty-five feet behind a white Dodge minivan, which was behind a large, green, older vehicle. All four vehicles were traveling in the same direction, apparently at a speed of between 35 and 45 miles per hour. When the lead car (the old green vehicle) turned right off River Road, the minivan ahead of Carpinet suddenly braked to a full stop. Carpinet successfully braked to a full stop approximately three or four feet behind the minivan. Mitchell was unable to stop, however. Her foot slipped off the brake pedal and depressed the accelerator before she was able to re-engage braking. Her vehicle ran into the back of Carpinet's vehicle.

¶ 3 Upon impact, Carpinet's head snapped forward and back. He refused medical treatment at the scene but the next day, he saw John Querci, D.O., complaining of headaches, neck pain, and back pain. Dr. Querci treated him sixteen times over the next two months for whiplash. The treatments were unsuccessful in reducing his pain. He underwent an MRI and was diagnosed with a herniated disc in his neck. The pain escalated and upon Querci's recommendation, Carpinet contacted David Sedor, M.D., who recommended surgery. Carpinet initially scheduled surgery for June of 1998, but canceled it and did not see a doctor for his neck pain for approximately one year thereafter. The pain increased to an intolerable level during that time. He contacted Querci again in April of 1999 and had surgery in September of 1999. The surgery alleviated his symptoms, leaving him with only minor pain.

¶ 4 Post-trial motions seeking a new trial were denied and appellant now raises fifteen claims of error on appeal: [2]

I. Whether the trial court abused its discretion or committed an error of law in denying defendant's Motion for Post-trial Relief where it failed

2. We are compelled to comment on the state of this appeal as presented to this court. First, it is clear beyond cavil that we are ill-served by a trial court opinion which responds to appellant's twenty-four claims of error in that court with a single paragraph which summarily concludes that "defendant's claims of error are without merit" and does not discuss a single issue. Second, although appellant has reduced her claims of error to fifteen on this appeal, many of these have been waived by examination of the record which demonstrates a lack of record-protection awareness throughout the trial. In addition, we have said many times that urging a multitude of errors on appeal is generally seen as bad appellate strategy because the weaker or non-meritorious issues tend to detract from the more meaningful issues which may support a finding of reversible error.

to charge the jury on the defense of sudden emergency?

II. Whether the trial court abused its discretion or committed an error of law by failing to properly instruct the jury on the assured clear distance ahead rule?

III. Whether the trial court abused its discretion or committed an error of law by refusing to instruct the jury that the sudden emergency defense is not required to be set forth in an Answer?

IV. Whether the trial court abused its discretion of [sic] committed an error of law by refusing to charge the jury that Robert Carpinet was contributorily negligent?

V. Whether the trial court abused its discretion or committed an error of law by refusing to charge the jury that they could find that the automobile accident was unavoidable?

VI. Whether the trial court abused its discretion or committed an error of law in denying defendant's Motion for a Mistrial after plaintiffs' counsel improperly questioned defendant regarding her prior employment in the insurance business?

VII. Whether the trial court abused its discretion or committed an error of law by permitting Dr. David Sedor to testify from an attorney-prepared summary of proposed testimony of a physician which did not correspond to information set forth in the physician's medical records/medical reports?

VIII. Whether the trial court abused its discretion or committed an error of law by denying Defendant's Motion in Limine seeking to preclude the testimony of Dr. David Sedor with respect to the effect of cross-examination, the credibility of the Plaintiff and the credibility of himself?

IX. Whether the trial court abused its discretion or committed an error of law by permitting Dr. David Sedor to testify with respect to insurance reasons for Robert Carpinet's referral to him by another physician?

X. Whether the trial court abused its discretion or committed an error of law by permitting Dr. John Querci to testify that the findings of Dr. John Presper, Defendant's physician, were totally ridiculous.

XI. Whether the trial court abused its discretion or committed an error of law by charging the jury on aggravation of a pre-existing medical condition where it was never pleaded in the Complaint and where there was [sic] conflicting medical opinions presented by Plaintiff's two (2) physicians.

XII. Whether the trial court abused its discretion or committed an error of law by instructing the jury to make a separate award for loss of pleasures and enjoyments of life?

XIII. Whether the trial court abused its discretion or committed an error of law by permitting the jury to make an award for emotional distress and anxiety without instructing the jury on this subject, which in any event, is not a separate item of damage?

XIV. Whether the trial court abused its discretion or committed an error of law by permitting the jury to return a verdict for loss of feeling of well-being even though the court failed to instruct the jury on that subject and which, in any event, is not a separate item of damage anyhow?

XV. Whether the jury verdict of $650,000.00 was plainly excessive and exorbitant and clearly beyond what the evidence warranted and should be subject to a remitter, [sic] reduced or set aside?

¶ 5 This court will not reverse a trial court's decision regarding the grant or refusal of a new trial absent an abuse of discretion or an error of law. *Pulliam v. Fannie,* 2004 PA Super 116, ¶ 11, 850 A.2d 636 (2004) (citing *Antoniotti v. Eckels,* 840 A.2d 1013, 1015 (Pa.Super.2003)). Where an appellant claims that the trial court erred in denying a new trial due to an allegedly objectionable jury charge, a timely and "specific objection must be made to preserve [this] claim...." *McNeil v. Owens–Corning Fiberglas Corp.,* 545 Pa. 209, 680 A.2d 1145, 1149 (1996) (citation omitted); *see Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595, 597 (1981).

¶ 6 We first review appellant's claims of error regarding the court's charge to the jury on damages. Mitchell alleges that the trial court erred by (1) instructing the jury to make a separate award for loss of pleasures and enjoyments of life; (2) allowing the jury to award for emotional distress and anxiety; and (3) permitting the jury to make a separate award for the past, present, and future loss of feeling of well-being. Carpinet counters that Mitchell failed to properly preserve these issues and that the instructions were proper.

¶ 7 "The trial judge is ultimately responsible for defining all pertinent questions of law, and all issues which are relevant to pleadings and proof may become the subject of jury instructions." *Bucchianeri v. Equitable Gas Co.,* 341 Pa.Super. 319, 491 A.2d 835, 839–40 (1985) (citation omitted); *accord Smith v. Clark,* 411 Pa. 142, 190 A.2d 441, 443 (1963) (citations omitted); *Spearing v. Starcher,* 367 Pa.Super. 22, 532 A.2d 36, 39 (1987) (citation omitted); *see Archer v. Pennsylvania Railroad Co.,* 166 Pa.Super. 538, 72 A.2d 609, 611 (1950) (stating, "[t]he functions of a trial judge embrace not only the duty to state to the jury correct principles of law applicable to the pending case and to endeavor to make such principles understandable in plain language, but they also impose upon the judge the duty to assist the jury in applying those principles to the issues presented to them for determination.") (citations omitted). In reviewing a claim regarding error with respect to a specific jury charge, we must view the charge in its entirety taking into consideration all the evidence of record and determine whether or not error was committed and, if so, whether that error was prejudicial to the complaining party. *Lockhart v. List,* 542 Pa. 141, 665 A.2d 1176, 1179 (1995) (citations omitted).

¶ 8 In *Willinger v. Mercy Catholic Medical Center,* 482 Pa. 441, 393 A.2d 1188 (1978), our supreme court examined whether, in a wrongful death action, the deceased could recover for "loss of life's pleasures." In answering that question in the negative, the supreme court noted:

Even where the victim survives a compensable injury, this Court has never held that loss of life's pleasures could be compensated other than as a component of pain and suffering. Indeed, the two types of loss are interrelated.

*Willinger,* 393 A.2d at 1191 (relying on *Corcoran v. McNeal,* 400 Pa. 14, 161 A.2d 367, 372–73 (1960)). In *Wagner by Wagner v. York Hospital,* 415 Pa.Super. 1, 608 A.2d 496 (1992), the appellant argued that the trial court erred when "it told the jury to award for loss of life's pleasures as a distinct element of damages rather than as a component of pain and suffering." *Wagner,* 608 A.2d at 501. The *Wagner* court disagreed, finding that the jury charge did "not give the impression that loss of life's

pleasures is a separate element of damages rather than a component of pain and suffering." *Id.*[3]

■ ¶ 9 We first note that Mitchell properly objected, taking exception to the Jury Verdict "Interrogatory Number 3 with the menu". Although Mitchell did not explicitly object to the trial court's charge on this point, Mitchell timely objected to the jury verdict interrogatory, which flowed from the charge.

¶ 10 The relevant interrogatory is:

3. State the amount of damages, if any, sustained by the Plaintiff, Robert J. Carpinet, as a result of the accident.

   (a) For past, present, and future pain and suffering.

   (b) For past, present and future loss of the pleasures and enjoyments of life.

   (c) For past, present, and future emotional distress and anxiety.

   (d) For past, present, and future embarrassment and humiliation.

   (e) For the past, present, and future loss of feeling of well-being.

   (f) For scarring and disfigurement.

¶ 11 The court's charge to the jury, in pertinent part, was as follows:

The damages recoverable by the Plaintiff in this case and the testimony that go to make up each of them, which I will discuss separately, are as follows: Past, present and future pain and suffering; past, present and future embarrassment and humiliation; disfigurement; past, present and future loss of enjoyment of life. They're the damages that Plaintiff is entitled to recover

... Now, what is pain and suffering? Pain and suffering comprises the following: Physical pain, mental anguish, discomfort, inconvenience and distress.

Now you have to analyze the testimony to determine whether or not there's facts presented to that which would allow you to conclude that the Plaintiff has suffered any or all of those items that comprise pain and suffering.

If you find that he has sustained any or all of those items, then you have to award him just compensation. If you find that he has suffered in the past, the present and the future, you must award him compensation for past, present and future pain and suffering.

So that's how you have to analyze pain and suffering. They're the items that comprise it. Was there testimony presented for you to find that he has suffered in the past, present or future?

Embarrassment and humiliation, the Plaintiff is entitled to be fairly and adequately compensated for such embarrassment and humiliation that you believe he has endured and will continue to endure in the future as a result of his injuries.

---

**3.** We are cognizant of cases that hold otherwise. A closer examination of their pedigree reveals a reliance on *Corcoran v. McNeal*, 400 Pa. 14, 161 A.2d 367 (1960), before the *Willinger* court's clarification. For example, in *Pratt v. Stein*, 298 Pa.Super. 92, 444 A.2d 674 (1982), the appellant argued that the trial court, in charging the jury, failed to explain that "loss of life's pleasures, inconvenience and embarrassment" was a subcategory of "pain and suffering." *Id.* at 708. Relying on *Lebesco v. Southeastern Pennsylvania Trans-* *portation Authority*, 251 Pa.Super. 415, 380 A.2d 848, 852 (1977), the *Pratt* court disagreed with appellant, holding that " 'loss of such pleasures of life is a separate and compensable element of damages in a personal injury action' and an instruction so informing the jury is proper." *Pratt*, 444 A.2d at 709 (quoting *Lebesco*, 380 A.2d at 852). The *Lebesco* court, however, relied upon a pre-*Willinger* interpretation of *Corcoran*. As such, we abide by the supreme court's amplification in *Willinger*.

Is there any testimony that will allow you to award for past, present and future embarrassment and humiliation? If there is, then you must adequately compensate the Plaintiff for that particular loss.

Disfigurement, the disfigurement which the Plaintiff sustained as a result of this accident is a separate testimony [sic] of damages recognized by law; therefore, in addition to such items as you award for pain and suffering and for embarrassment and humiliation, the Plaintiff is entitled to be fairly and adequately compensated for the disfigurement he has suffered in the past as a result of this accident and which he will continue to suffer during the future duration of his life.

There's been some testimony as a result of his operation that the Plaintiff has suffered some scarring. That's called disfigurement. You have to decide what is that worth.

First, you have to decide whether or not there is any disfigurement. If you decide there is, then what do you pay the Plaintiff to adequately compensate him for that?

Another measure of damages to which the Plaintiff is entitled, if you so find, is to be compensated for past, present and future loss of his ability to enjoy any of the pleasures of life as a result of his injuries.

Is there testimony that would show you and prove to you that he has suffered a loss of the enjoyment of life? If there is, then you have to adequately compensate him for that loss. If there's

not, then he's not entitled to be compensated.

N.T. 10/13/00 at pp. 451–52, 454–57.

¶ 12 The jury returned the following verdict on damages:

Question Three. State the amount of damages sustained by Plaintiff, Robert J. Carpinet as a result of the accident: (a) for past, present and future pain and suffering, $300,000; (b) for past, present and future loss of the pleasures and enjoyment of life, $200,000; (c) for past, present and future emotional distress and anxiety, $75,000; (d) for past present and future embarrassment and humiliation, none; (e) for past, present and future loss of feeling of well-being, $25,000; (f) for scarring and disfigurement, none. Total compensatory damage for Plaintiff, Robert J. Carpinet, $600,000.

Question Four [wife's consortium claim]. Yes. Amount of damages, $50,000.

¶ 13 Under the totality of the circumstances, we find that the charge in its entirety was prejudicial to Mitchell as the charge and the jury verdict interrogatory flowing from it impermissibly instruct that the catalog of misfortunes are separate compensable elements of damages. See Willinger, 393 A.2d at 1191; Wagner, 608 A.2d at 502. Accordingly, the jury verdict interrogatory was improper. See Bucchianeri, 491 A.2d at 839–40; Archer, 72 A.2d at 610. We find that categories (a), (c), and (e) of the interrogatory are clearly duplicative. Moreover, we find, as did the jury apparently, that there was no evidence presented on (d) embarrassment and humiliation [4] and on (f) scarring and disfigurement.[5] With respect to item (b), we recognize that the law has not been

---

4. See Lonon v. Pep Boys, 371 Pa.Super. 291, 538 A.2d 22 (1988).

5. See Gravlin v. Fredavid Builders and Developers, 450 Pa.Super. 655, 677 A.2d 1235 (1996).

particularly clear whether loss of life's pleasures is separate from, rather than a component of, pain and suffering. *See* Subcommittee Note, Pennsylvania Suggested Standard Civil Jury Instructions 6.01I. Indeed, the suggested instructions appear to perhaps permit separate recovery. Pa. SSJI (Civ), 6.01I. Here, the court charged from the suggested instruction. While it may seem harsh to fault the trial court for reliance on the suggested instruction, the fact that the charge was taken from the instruction is not dispositive of its legal propriety. *Jeter v. Owens–Corning Fiberglas Corp.,* 716 A.2d 633, 636 (Pa.Super.1998). Our supreme court "has never adopted the Pennsylvania Standard Jury Instructions, which exist only as a reference material available to assist the trial judge and trial counsel in preparing a proper charge." *Id.*

¶ 14 Further, it appears that piecemeal awards for various forms of pain and suffering have never been the law of Pennsylvania and we see no authority which would allow juries to break into separate, individual compartments that which has been long considered a single item of damages. We find that the court was in error in inviting the jury to enter six separate awards for pain and suffering and that the better practice is to charge on pain and suffering and to allow counsel to argue the components within reason. The prejudicial nature of the interrogatory warrants an award of a new trial limited to damages. Because we award a new trial limited to damages, we need not address appellant's claim regarding remittitur.

¶ 15 We will now address appellant's remaining claims *seriatim.*

¶ 16 Mitchell contends that the trial court erred by failing to instruct the jury on the sudden emergency doctrine when the facts clearly demonstrated that a sudden emergency occurred. We disagree.[6]

The sudden emergency doctrine is frequently employed in motor vehicle accident cases wherein a driver was confronted with a perilous situation requiring a quick response in order to avoid a collision. The rule provides generally, that an individual will not be held to the 'usual degree of care' or be required to exercise his or her 'best judgment' when confronted with a sudden and unexpected position of peril created in whole or in part by someone other than the person claiming protection under the doctrine. The rule recognizes that a driver who, although driving in a prudent manner, is confronted with a sudden or unexpected event which leaves little or no time to apprehend a situation and act accordingly should not be subject to liability simply because another perhaps more prudent course of action was available.

*Lockhart v. List,* 542 Pa. 141, 665 A.2d 1176, 1180 (1995) (citation omitted). Upon a thorough examination of the record, we conclude that a jury instruction on the sudden emergency doctrine was not warranted. Carpinet's stop did not qualify as a sudden emergency. Rather, we find that sudden braking on a highway must be deemed a foreseeable occurrence. Indeed, any sudden or unexpected peril in this matter was created in part by Mitchell's own actions in apparently following too closely behind Carpinet's vehicle and Mitchell did not pursue alternative action

---

6. We dismiss appellees' suggestion that the claim is not preserved for appellate review. It is clear that Mitchell timely and specifically objected to the instruction. *See* N.T., Oct. 12, 2000, at 342–43; *see also* N.T., Oct. 13, 2000, at 461.

to avoid collision in any event. The sudden emergency doctrine's omission from the jury charge was not error, as the facts of the case failed to support application of the doctrine. *See Levey v. DeNardo,* 555 Pa. 514, 725 A.2d 733, 735–36 (1999) (citing *Lockhart,* 665 A.2d at 1180).

¶ 17 Mitchell next argues that the trial court erred "by failing to properly instruct the jury on the assured clear distance ahead rule[.]" Specifically, she contends that the trial court's recitation of the Pennsylvania statutory codification of the assured clear distance ahead rule provided an inadequate jury instruction. Carpinet counters that Mitchell waived the issue by failing to properly preserve it for appeal. We agree that the issue has not been properly preserved. After the trial court instructed the jury, the court requested a sidebar and asked the parties to submit their objections or corrections. Mitchell did not object to the court's instruction on the assured clear distance ahead rule. Mitchell, by failing to specifically preserve the issue at trial, has waived it on appeal. *See McNeil,* 680 A.2d at 1149; *Tagnani,* 426 A.2d at 597; *see also* PA.R.APP.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception *shall* be taken to the language or omission complained of.") (Emphasis supplied.)

¶ 18 Mitchell next alleges that the trial court erred by "refusing to instruct the jury that the sudden emergency defense is not required to be set forth in an Answer[.]" As we have found that the trial court did not err in not charging the jury on the sudden emergency doctrine, we find no error in refusing to instruct the jury that the doctrine is not required to be set forth in the pleadings.

¶ 19 Mitchell next alleges that the trial court erred by refusing to charge the jury that Carpinet was contributorily negligent. Carpinet counters (a) that Mitchell failed to preserve the issue for appeal; (b) that the proposed point for charge discussing the defense of contributory negligence is not part of the record certified on appeal; and (c) that there was no evidence that Carpinet was contributorily negligent.

¶ 20 When challenging a court's refusal to include a point for charge in its instructions, the appellant must include the proposed point for charge in the certified record. *See Bennyhoff v. Pappert,* 790 A.2d 313, 319 (Pa.Super.2001), *appeal denied,* 573 Pa. 682, 823 A.2d 143 (2003). Because Mitchell did not include the proposed point for charge in the certified or reproduced record, the issue is waived. Moreover, we conclude that Mitchell's allegation that the trial court erred by failing to charge the jury that the accident was unavoidable is waived for the same reason, *i.e.,* by failing to include in the certified record the proposed charge on the doctrine of unavoidable accident. *See Bennyhoff,* 790 A.2d at 319.

¶ 21 Mitchell's next allegation of error is that the trial court erred in denying her motion for a mistrial after Carpinet's counsel, on re-cross examination, "improperly questioned [Mitchell] regarding her prior employment in the insurance business." The claim is based on the following exchange:

[CARPINET'S COUNSEL]. You talked about the construction business you were in and so forth. Mrs. Mitchell, you were in the insurance business for a number of years, were you not?

[MITCHELL'S COUNSEL]: Objection, Your Honor.

THE COURT: Sustained.

N.T., Oct. 10, 2000, at 151. Mitchell's counsel waited until Carpinet's counsel completed the re-cross examination and

the jury recessed for a break before requesting a mistrial. The trial court denied the request and the parties did not ask for, nor did the trial court offer, curative instructions to the jury.[7]

¶ 22 Where insurance is mentioned at trial, "[t]he general rule in Pennsylvania is that evidence of insurance is irrelevant and prejudicial and justifies grant of a mistrial." *Paxton Nat'l Ins. Co. v. Brickajlik,* 513 Pa. 627, 522 A.2d 531, 533 (1987) (citation omitted); *accord Dolan v. Carrier Corp.,* 424 Pa.Super. 615, 623 A.2d 850, 853 (1993); *see also* PA.R.E. 411 (discussing admissibility of evidence of liability insurance). However, as Justice Musmanno noted, "we have never said that the mention of insurance, *per se,* like dynamite with a live fuse, will blow up the case." *O'Donnell v. Bachelor,* 429 Pa. 498, 240 A.2d 484, 487 (1968). The movant must show prejudice. *See Dolan,* 623 A.2d at 853 (citation omitted); *accord Allied Elec. Supply Co. v. Roberts,* 797 A.2d 362, 364 (Pa.Super.2002), *appeal denied,* 570 Pa. 680, 808 A.2d 568 (2002).

¶ 23 We conclude that the trial court did not abuse its discretion in denying the motion for mistrial. Mitchell summarily argued that the question *ipso facto* established prejudice. We disagree. The law requires more than the mere mention of the word "insurance" to establish prejudice warranting the extreme remedy of a mistrial. *See O'Donnell,* 240 A.2d at 487; *Dolan,* 623 A.2d at 853. Moreover, it was counsel who mentioned the word "insurance," the witness never responded, and the question referred to the witness's past

employment and not the presence of indemnity insurance. The claim is dismissed.

¶ 24 We turn now to Mitchell's allegation that the trial court improperly allowed Carpinet's prime expert witness, Dr. Sedor, to use an attorney-prepared summary of proposed testimony which did not correspond to information set forth in his medical records and medical reports. Two days prior to deposing Dr. Sedor, Carpinet submitted to Mitchell an attorney-prepared summary of Sedor's proposed testimony. When Carpinet referred to the summary during Dr. Sedor's deposition, Mitchell objected as follows:

[CARPINET'S COUNSEL]....I'm showing that you [sic] Summary. Did I prepare that and forward that to your office some time ago in order to determine whether the Summary accurately describes your opinions with regard to Bob Carpinet?

[SEDOR]. Yes, you did.

Q. And did you review that Summary and sign the summary?

A. Yes, I did.

Q. In fact, you signed the summary, I believe, just two days ago; is that right?

A. Yeah.

Q. Does the summary fairly and accurately describe today your opinions in terms of your prognosis and in terms of the result of the surgery and so forth with regard to Bob Carpinet?

[MITCHELL'S COUNSEL]: Objection because it's prepared by counsel and not

---

7. Although counsel waited until the completion of re-cross examination before requesting a mistrial, we find Mitchell's request for mistrial was timely and that the issue is preserved for review. *Cf. McMillen v. 84 Lumber, Inc.,* 538 Pa. 567, 649 A.2d 932, 934 (1994) (finding waiver, under the circumstances, where counsel failed to move for a mistrial after successfully objecting to improper testimony); *Allied Elec. Supply Co. v. Roberts,* 797 A.2d 362, 365 (Pa.Super.2002) (finding waiver when counsel waited until testimony was complete and jury was charged before moving for a mistrial), *appeal denied,* 570 Pa. 680, 808 A.2d 568 (2002).

the doctor and is not referenced anywhere in the doctor's records.

[CARPINET'S COUNSEL]: According to the Rules of Civil Procedure, a Summary of Proposed Testimony, as long as signed and verified by the doctor, can serve the equal purpose of a written report.

Q. But go ahead, Doctor.

[MITCHELL'S COUNSEL]: Yeah. Renew—objection is it still stands.

[CARPINET'S COUNSEL]: Sure.

A. Okay. Well, again, this is true and accurate and correct with one exception. There's one sentence, looking back, that could be confusing. And that is that Mr. Carp—Bob Carpinet was and is required to undergo physical therapy for his neck and shoulder. As long as it's clear that that's the neck and shoulder pain. He also has a shoulder problem unrelated to the accident and the—just so that no one's confused.

Dr. Sedor's Video Deposition Transcript (unredacted), Mar. 22, 2000, at 46–47.[8] Mitchell reiterated this objection in a motion *in limine.* The trial court overruled Mitchell's objection.

▇▇▇ ¶ 25 Pennsylvania Rule of Civil Procedure 4003.5(a) states in relevant part:

(1) A party may through interrogatories require

. . . .

(b) the other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his or her answer a report of the expert or have

the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

PA.R.C.P. 4003.5(a)(1)(b). "To constitute reversible error [thereby justifying a new trial], a ruling on evidence . . . must be shown not only to have been erroneous but harmful to the party complaining." *Anderson v. Hughes,* 417 Pa. 87, 208 A.2d 789, 791 (1965); *accord Davis v. Steigerwalt,* 822 A.2d 22, 25 (Pa.Super.2003). "[A]bsent a manifest abuse of discretion[,]" we defer to the trial court in admitting or excluding expert testimony. *Walsh v. Kubiak,* 443 Pa.Super. 284, 661 A.2d 416, 419 (1995) (*en banc*).

¶ 26 Mitchell argues (1) that Rule 4003.5(a)(1)(b) explicitly requires that the *expert,* and not the attorney, "state the substance of the expert's facts and opinions and a summary of the grounds for each opinion"; (2) that the attorney-prepared report did not accurately summarize the records; and (3) that Sedor's testimony exceeded the scope of the report. Carpinet counters that Mitchell failed to preserve the issue for appeal and waived the issue by failing to include the attorney-prepared report in the certified record. In the alternative, Carpinet argues that Rule 4003.5(a)(1)(b) does not preclude an attorney-prepared report and Sedor's testimony was within the fair scope of the report. Carpinet avers that the attorney-prepared report summarized Sedor's office records and letters concerning Carpinet's diagnosis.

¶ 27 We first note that Mitchell timely objected. We also note that Mitchell failed to include the attorney-prepared report in the certified record. Since we cannot examine whether Sedor's testimony

---

**8.** The transcription of Sedor's videotape deposition, although part of the reproduced record, was not part of the certified record.

was within the fair scope of the report, we agree that Mitchell has waived the issues of whether the report accurately summarized Sedor's records and whether Sedor's testimony exceeded the fair scope of the report.

¶ 28 With respect to the propriety of the attorney-prepared summary under PA.R.C.P. 4003.5(a), we acknowledge that the rules do not explicitly prohibit an attorney-prepared summary. We would strongly caution against such practice, however, as it would discourage objectivity and, perhaps, encourage mischief. Experts could choose to parrot the attorney-prepared report in words not their own, for example. Indeed, the analogous Federal Rule of Civil Procedure 26(a)(2)(B) requires that the *expert prepare* and sign the report. *See* FED.R.CIV.P. 26(a)(2)(B) (stating, in part, "[e]xcept as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case...be accompanied by a written report *prepared and signed* by the witness.") (emphasis added).

¶ 29 Mitchell next alleges that the trial court erred in denying her motion *in limine* to preclude Sedor's testimony. Specifically, she sought to exclude Sedor's testimony that (a) Carpinet was credible; (b) cross-examination did not change his (Sedor's) opinion; and (c) since he performed the surgery, he was in the best position to discuss Carpinet's injury.

¶ 30 With respect to the first subclaim, the issue is moot because the trial court sustained Mitchell's objection at trial and precluded Sedor from testifying that Carpinet was credible. With respect to her second and third sub-claims, Mitchell's reliance on *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986), is misplaced. In *Seese*, our supreme court found that it was error in a criminal trial for sexual assault to admit expert testimony about the credibility of child sex-abuse victims. Here, although the questions posed of Sedor seemingly sought conclusory and perhaps self-serving answers, we do not find the court's rulings on admissibility to amount to reversible error.

¶ 31 Mitchell next alleges that the trial court erred by failing to exclude Sedor's testimony as to why Carpinet was referred to him because in doing so it was established that Carpinet had health-care insurance. We disagree. Presuming that Mitchell timely objected and properly preserved the issue for appeal and that the mention of the name of Carpinet's insurer was inappropriate, we conclude that Mitchell failed to demonstrate prejudice. *See Dolan*, 623 A.2d at 853. The trial court, therefore, did not abuse its discretion in denying a motion for a new trial. *See Allied Elec. Supply Co.*, 797 A.2d at 364.

¶ 32 Mitchell next alleges that the trial court erred by permitting Dr. Querci to testify that the findings of Dr. John Presper "were totally ridiculous." The relevant testimony is:

> [CARPINET'S COUNSEL]. And with the exception of the carpal tunnel, do you disagree with all of those findings [of Dr. Presper]?
>
> [QUERCI]. All eight of them. Totally, totally ridiculous.
>
> Q. There was -
>
> [MITCHELL'S COUNSEL]. Objection. That's uncalled for.

Querci's Video Deposition Transcript (unredacted), Mar. 22, 2000, at 35. The trial court overruled the objection.

¶ 33 Although it is always inappropriate for an expert to disparage the opinion of another expert in this way and although we find Querci's personal commentary on

Presper's conclusions to be highly inappropriate in this case, we conclude that the court's failure to sustain the objection was not reversible error and must again note that Mitchell's reliance on *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986), to support her claim is misplaced.

¶ 34 Mitchell's sole remaining allegation of error is that the trial court abused its discretion by charging the jury on aggravation of a preexisting medical condition when (a) it was never pleaded in the complaint and (b) Carpinet's medical experts purportedly provided conflicting opinions as to the cause of Carpinet's injuries. Carpinet counters that Mitchell waived the issue by failing to properly preserve it for appeal. We agree.

¶ 35 Mitchell failed to specifically object to the charge of aggravating a preexisting medical condition. By failing to preserve this issue at trial, she has waived it on appeal. *See McNeil*, 680 A.2d at 1149; *Tagnani*, 426 A.2d at 597; *see also* PA. R.APP.P. 302(b). We have addressed the issues raised and conclude that the court's charge to the jury on damages was error warranting the award of a new trial limited to damages.

¶ 36 Affirmed in part. Reversed in part. New trial limited to damages awarded. Case remanded. Jurisdiction relinquished.

¶ 37 STEVENS, J. files a Dissenting Opinion.

STEVENS, J., dissenting.

¶ 1 While I join the remainder of the Majority Opinion, I respectfully dissent to the Majority's decision granting relief to Appellant on her claim that the verdict interrogatory and the court's charge on damages were erroneous. Appellant failed to offer a timely and specific objection at trial to the charge and interrogatory on loss of life's pleasures and enjoyments of life, and on loss of feeling of well-being. Mitchell's only objection was that emotional distress and anxiety, and embarrassment and humiliation, were not explained in the jury charge, and should have been categorized as a component of pain and suffering in the jury verdict interrogatory:

**Trial Court:** Any objections, corrections? Anything you want me to say or not say?

\* \* \*

**Defense Counsel:** Initially, Your Honor, I just noticed on the Jury Verdict Interrogatories you have (c) and (d) here which we have not told the Jury about and which, in my opinion, properly belong under (a) anyhow. I think that's how you defined it for them.

**Trial Court:** Objection noted. Anything else?

**Defense Counsel:** You're going to let it go out without explaining it to them?

**Trial Court:** Yes, I think it's adequately explained.

N.T. 10/13/00 at 460–61. Only the thirteenth issue's challenge regarding the charge on emotional distress and anxiety, therefore, remains preserved.

Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error. A reviewing court will not grant a new trial on the adequacy of the charge unless there is a prejudicial omission of something that is basi[c] or fundamental. In reviewing a trial court's charge to the jury, we must not

take the challenged words out of context of the whole of the charge, but must look to the charge in its entirety.

*Stewart v. Motts*, 539 Pa. 596, 606, 654 A.2d 535, 540 (1995) (quotations and citations omitted).

¶ 2 The notes of testimony show that the trial court's instruction on damages tracked Pennsylvania Suggested Standard Civil Jury Instructions, § 6.01E and F (2003) on pain and suffering, which includes distress within pain and suffering damages:

Now, what is pain and suffering? Pain and suffering comprises the following: Physical pain, mental anguish, discomfort, inconvenience, *and distress.*

Now, you have to analyze the testimony to determine whether or not there's [sic] facts presented to that which would allow you to conclude that the Plaintiff has suffered any or all of those items that comprise [sic] pain and suffering. If you find that he has sustained any or all of those items, then you have to award him just compensation. If you find that he has suffered in the past, the present and the future, you must award him compensation for past, present and future pain and suffering.

So that's how you have to analyze pain and suffering. They're the items that comprise it.

N.T. 10/13/00 at 454–55 (emphasis added). The jury verdict interrogatories on damages, however, read as follows:

3. State the amount of damages, if any, sustained by the Plaintiff, Robert J. Carpinet, as a result of the accident.

   (a) For past, present, and future pain and suffering.

   (b) For past, present, and future loss of the pleasures and enjoyments of life.

   (c) For past, present, and future emotional distress and anxiety.

   (d) For past, present, and future embarrassment and humiliation.

   (e) For the past, present, and future loss of feeling of well-being.

   (f) For scarring and disfigurement.

Jury Verdict Interrogatories, at 2. After deliberations, the jury returned and its foreman read the verdict in open court, in which damages were awarded in the amounts of $300,000.00 for (a), $200,000.00 for (b), $75,000.00 for (c), $0.00 for (d), $25,000.00 for (e), and $0.00 for (f).

¶ 3 Reading the instructions and interrogatories as a whole, I would find that the jury was not misled into awarding for distress twice, i.e., as a component of "(a)" pursuant to the charge, and as a separate award again in "(c)." The court explicitly instructed the jury that distress was part of pain and suffering, and, in contrast to its elaboration on other potential damages, provided no further instruction on "emotional distress" as a separate and additional category of recovery for distress. Therefore, no reason exists to depart from well-settled legal presumptions that juries follow instructions, *See Commonwealth v. Jones*, 811 A.2d 1057 (Pa.Super.2002), and render inherently consistent verdicts in accord with the evidence presented. *See Kit v. Mitchell*, 771 A.2d 814, 818–19 (Pa.Super.2001). The jury could easily understand from this record that one award for distress was permissible in the case, and such award was recorded under (c) on the verdict interrogatories. Accordingly, I would find no reversible error.