**COMMONWEALTH of Pennsylvania**

v.

**Jonathan Paul JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 3, 2002.
Filed Nov. 22, 2002.

M. Susan Ruffner, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney and Karen Edwards, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before: FORD ELLIOTT, KLEIN, and MONTEMURO,* JJ.

FORD ELLIOTT, J.

¶ 1 In this appeal we are asked to determine whether trial counsel was ineffective for failing to object to certain portions of the Commonwealth's expert's testimony and to the prosecutor's allegedly improper closing argument. For the reasons that follow, we affirm.

¶ 2 Appellant was charged with three counts of burglary, three counts of rape, two counts of aggravated indecent assault, two counts of robbery, and one count of simple assault in connection with the nighttime attacks on three elderly women in their homes.[1] Following a six-day jury trial, appellant, who was represented by court-appointed counsel Suzanne Filliaggi, Esq., was found not guilty of one count of rape but guilty of all remaining counts. On February 13, 2001, the trial court sentenced appellant to 10 to 20 years' incarceration on each of the 3 counts of burglary; 10 to 20 years' incarceration on each of the 2 counts of rape; 10 to 20 years' incarceration on each of the 2 counts of robbery; 5 to 10 years' incarceration on each of the 2 counts of aggravated indecent assault; and no further penalty for simple assault. All sentences were imposed consecutively, for an aggregate sentence of 80 to 160 years' incarceration.

¶ 3 For reasons that are not clear from the record, appellant proceeded *pro se,*

filing an untimely petition for reconsideration of sentence on February 26, 2001 and a timely notice of appeal on March 7, 2001.[2] Appellant also filed a motion for recusal of the trial court, the Honorable Jeffrey A. Manning, on March 14, 2001. New counsel, James. R. Wilson, Esq., was eventually appointed and filed an amended notice of appeal and a statement of matters complained of on appeal. Appellant raises the following issues on appeal:

I. DID TRIAL COUNSEL RENDER INEFFECTIVE ASSISTANCE IN FAILING TO OBJECT TO TESTIMONY BY A DNA EXPERT THAT THE DEFENDANT'S DNA PROFILE WAS UNIQUE AND THAT HE WAS THE SOURCE OF THE DNA FOUND AT THE CRIME SCENE?

II. WAS THE DEFENDANT DENIED [A] FAIR TRIAL BY THE IMPROPER CLOSING ARGUMENT [OF THE] PROSECUTING ATTORNEY, WHICH ARGUED FACTS NOT IN EVIDENCE?

III. DID TRIAL COUNSEL RENDER INEFFECTIVE ASSISTANCE IN FAILING TO OBJECT TO THE IMPROPER CLOSING REMARKS OF THE PROSECUTING ATTORNEY THAT THE TESTIMONY OF

---

* Retired Justice assigned to Superior Court.

1. 18 Pa.C.S.A. §§ 3502, 3121(1) and (2), 3125(1), 3701(a)(1)(ii), and 3125(1), respectively.

2. Attorney Filliaggi filed a petition to withdraw as counsel on March 28, 2001 because appellant had informed her he wanted to raise the issues of counsel's ineffectiveness on appeal. (R. at 44.) Appellant also filed a petition for appointment of counsel and for copies of the trial transcripts with this court

on March 23, 2001, which this court denied without prejudice to seek the requested relief in the trial court. (R. at 45.) At some point, James R. Wilson, Esq., of the Allegheny County Office of the Public Defender was appointed to represent appellant. (R. at 49.) This court granted an extension of time to file an amended notice of appeal, and Attorney Wilson filed the amended notice on August 21, 2001 and a Concise Statement of Matters Complained of on Appeal on November 8, 2001.

THE DNA EXPERT ESTAB-
LISHED THE DEFENDANT'S
GUILT TO A MATHEMATICAL
CERTAINTY?

Appellant's brief at 9.

■ ¶ 4 "To prevail on a claim alleging counsel's ineffectiveness, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness." *Commonwealth v. Wallace*, 555 Pa. 397, 407, 724 A.2d 916, 921 (1999), citing *Commonwealth v. Howard*, 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994) (other citation omitted). In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is. a " 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Commonwealth v. Kimball*, 555 Pa. 299, 308, 724 A.2d 326, 331 (1999), quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A " '[r]easonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *Id.* at 309, 724 A.2d at 331, quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ ¶ 5 In this case, appellant claims counsel was ineffective for failing to object to the testimony of the Commonwealth's DNA expert, Katherine Colombo, who testified to a reasonable degree of scientific certainty that appellant was the source of the DNA in the samples she studied. (Notes of testimony, 10/13–18/00 at 400–401.) According to appellant, Colombo's testimony did not merely assist the jury in understanding the evidence; it invited the jury to substitute her judgment for their

own. (Appellant's brief at 19.) Appellant also claims that "it is not clear that it is generally accepted in the scientific community that a genetic profile, even using 13 locations, can specifically identify an individual." (*Id.* at 20.) As appellant opines, "[N]o *Frye* [3] hearing was held in this case to make that determination. And there is evidence that such a finding has not achieved general acceptance in the scientific community." (*Id.*)

¶ 6 Appellant does not specifically claim counsel was ineffective for failing to request a *Frye* hearing. He does, however, argue that counsel was ineffective for failing to object to Colombo's testimony identifying appellant as the source of the DNA found at the crime scene because our supreme court has not yet held that the scientific community has generally accepted DNA testing as a means of identifying a particular individual. In his conclusion, appellant requests either a new trial or a *Frye* hearing. (Appellant's brief at 27.) Thus, while appellant has not precisely raised counsel's ineffectiveness for failing to request a *Frye* hearing, we will address the issue in the interest of finality and because it is suggested by his first issue and argued in both the summary of the argument and argument sections of his brief. *See* Pa.R.App.P. 2116(a), 42 Pa. C.S.A. ("ordinarily no point will be considered which is not set forth in the statement of questions involved *or suggested thereby* [ ]") (emphasis added).

¶ 7 We begin our analysis by focusing on Colombo's testimony leading up to her allegedly improper conclusion. Colombo, who is a senior DNA analyst with Cellmark Diagnostics, examined DNA samples from the three crimes using PCR and STR

---

3. *Frye v. United States,* 293 F. 1013 (1923).

testing.[4] These samples, which had previously been examined by two Allegheny County criminalists, had been taken from the victims' bodies, pajamas, underpants, and bed linens. (Notes of testimony, 10/13–18/00 at 389–390.)

¶ 8 Colombo testified at length, using charts to illustrate the findings of the testing done on the various samples. (*Id.* at 390–399.) As Colombo explained, samples will include both a sperm fraction (SF) and a non-sperm fraction (NSF) in an alleged sexual assault. (*Id.* at 393.) Various procedures are conducted to separate the different fractions, and the sperm fraction is then compared with the profile of the suspected perpetrator's DNA. In this case, Colombo had enough DNA to do both profiler plus testing, which looks at nine genetic regions, and co-filer testing, which looks at six genetic regions, two of which overlap with the nine genetic regions in the profiler-plus testing.

¶ 9 Based on the nine genetic regions Colombo was able to examine using profiler plus testing, she testified that the profile frequency for Caucasians is one in 9.6 billion individuals, and for African–Americans it is one in 10 billion individuals. (*Id.* at 400.) Looking at all 13 genetic locations (nine plus six minus two) examined in the co-filer testing, Colombo testified that the profile frequency for Caucasians is one in 1.3 times ten to the fifteenth power, and for African–Americans, one in two times

ten to the fifteenth power. (*Id.* at 400–401.)[5] As a result of her analysis, Colombo testified to a reasonable degree of scientific certainty and without objection:

> Based on the facts that the profiles are matching at either all nine or all 13 locations and based on the profile frequency generated in this case, it is my opinion that [appellant] is the source of the DNA in the samples that I mentioned, the profiles were consistent with his types.

*Id.* at 401.

¶ 10 Defense counsel immediately began cross-examination, during which Colombo opined that while the numbers would be smaller when comparing two related individuals, "There is still a good degree of difference between those two people. The numbers could be lower. I think they would still indicate or identify a person." (*Id.* at 415.)

¶ 11 According to appellant, trial counsel was ineffective for failing to object to this testimony because the scientific community has not generally accepted DNA analysis as a means of identifying a specific individual. (Appellant's brief at 20.) Rather, according to appellant, the two Allegheny County Crime Lab technicians testified that DNA profiling is exclusionary and cannot be used to identify a particular individual as the source of the DNA. (*Id.*) As the Commonwealth notes, however, the Cellmark expert had available to her the

---

4. PCR stands for polymerase chain reaction, and is a technique that "allowed specific regions of DNA to be copied millions of times so that those regions can be typed and compared to the same regions in the DNA of a known individual." (Notes of testimony, 10/13–18/00 at 384.) "STR" stands for short tandem repeat, and involves viewing a sequence of DNA that is repeated exactly one repeat sequence after another in tandem, like the cars of a train. (*Id.*) STR is a type of PCR test. (*Id.*)

Colombo testified that STR is a generally accepted scientific technique among scientists

who do DNA testing. (*Id.* at 385.) Our supreme court in *Commonwealth v. Blasioli,* 552 Pa. 149, 713 A.2d 1117 (1998), noted that PCR testing was gaining acceptance in the scientific community at that time. *Id.* at 157 n. 8, 713 A.2d at 1121 n. 8.

5. One in 1.3 quadrillion and one in 2 quadrillion, respectively. In the United States and France, one quadrillion equals a one followed by fifteen zeroes.

technology to analyze a much larger number of genetic locations than did the County lab. Additionally, one of the technicians testified that, while the County is limited in its ability to use DNA testing as anything but an exclusionary tool, the FBI has found the use of DNA testing as an inclusionary tool to be definite. (*Id.* at 322–323.)

 ¶ 12 Based on the foregoing, we conclude that counsel was not ineffective for failing to object to Colombo's testimony or to request a *Frye* hearing because appellant suffered no prejudice. While appellant argues that the expert asked the jury to substitute her judgment for its, the incontrovertible fact is that the jury had before it evidence that left little if any room for a conclusion that the DNA samples belonged to someone other than appellant. Appellant argues, however, that "[i]t may well be that, the odds notwithstanding, a second individual exists in the population with this genetic profile. The statistics indicate that this profile will occur again at some point, why not today?" The jury was free to consider that argument and to reject Colombo's opinion; however, the likelihood that the jury would have ignored the statistics Colombo presented is probably not much greater than the likelihood that someone in western Pennsylvania other than appellant has a DNA profile that matches the profile taken from the three crime scenes. As our supreme court has held, "where it is clear that Appellant has failed to meet the prejudice prong [of his ineffective assistance of counsel claim], the claim may be disposed on that basis alone, without a determination of whether the first two prongs have been met." *Commonwealth v. Wilson,* 543 Pa. 429, 440, 672 A.2d 293, 298 (1996), *cert. denied,* 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996) (citations omitted).

 ¶ 13 For the same reason, we find no merit to appellant's claim of counsel's ineffectiveness in failing to object to the prosecutor's closing argument. We have set out that portion of the argument to which appellant objects within the context of other relevant argument, emphasizing the allegedly objectionable remarks:

> *Usually when I talk to a jury at the end of my case I emphasize the fact that the Commonwealth must prove its case beyond a reasonable doubt, not beyond all doubt or to a mathematical certainty. I submit to you, however, if you think about it, consider the evidence, you will find that this is about as close to a mathematical certainty as anyone is ever likely to get....*

> Ladies and gentlemen, I submit to you from what you have heard just today from Katherine Colombo on the stand, the defendant's guilt has been proven to a mathematical certainty, has been proven beyond all doubt....

> [T]he chances of that being of a random person in the population having the same genetic markers as the rapist and as [appellant], one in two quadrillion. That's one [in] two plus 15 zeros. Far more, f[a]r more than the population— probably the population that's every been on the earth.

> *Ladies and gentlemen, it is a number that we can't even conceive. So that is why Katherine Colombo, the scientist from Cellmark, is able to say not just that he is—can be excluded, but she said absolutely that he is the one. This identifies him. This is unique. [Appellant] is the only person who has these thirteen genetic markers, the only one, and he is the one who left this semen. He is the rapist.*

> It is not like the police set out to get [appellant], they didn't even know who

he was. There were other people that were submitted to the crime lab, might be possible suspects, and their genetic markers were different. They were excluded....

*Katherine Colombo works for Cellmark. They work for anybody who pays them; defense, prosecution, individuals, anybody who needs to have this kind of work done. And those of—that's what they did. They came up with very reliable results which were also approved and reviewed by her supervisor in the Cellmark lab and she comes to the conclusion that beyond a mathematical certainty that Jonathan Jones is the man who did this crime.*

Notes of testimony, 10/13–18/00 at 453, 460, 462–464 (emphasis added).[6]

¶ 14 We find no prejudice, hence no ineffectiveness, for several reasons. First, as the trial court properly instructed the jury, attorneys' arguments are not evidence, and may only be considered to the extent they are supported by the evidence. (Notes of testimony, 10/13–18/00 at 471–472.) *See also Commonwealth v. Seibert,* 799 A.2d 54, 65 (Pa.Super.2002) (observing that reference to an accused's silence can be harmless error if corrected by adequate cautionary instructions; further noting that the trial court informed the jury that the district attorney's closing argument was not evidence, citing *Commonwealth v. Baez,* 554 Pa. 66, 720 A.2d 711 (1998) (noting that a prosecutor's comments do not constitute evidence)).

¶ 15 Second, the trial court instructed the jury that it was the sole judge of the facts, which it was to determine based on the evidence. The evidence, according to the trial court, included the testimony of witnesses and the exhibits. (Notes of testimony, 10/13–18/00 at 467–468.) "It is well-established that juries are presumed to follow the trial court's instructions." *Commonwealth v. Thornton,* 791 A.2d 1190, 1193 (Pa.Super.2002), citing *Commonwealth v. English,* 548 Pa. 528, 699 A.2d 710 (1997).

¶ 16 Additionally, the trial court properly instructed the jury on the Commonwealth's burden of proof beyond a reasonable doubt, and included an instruction that it was not the Commonwealth's burden to prove its case to a mathematical certainty. (*Id.* at 469–470.) Finally, the flaws in the prosecution's closing argument do not diminish the weight of the evidence implicating appellant or give us reason to believe that, but for the prosecutor's inaccurate statements, the results of this trial would have been different. *See Kimball, supra* at 308, 724 A.2d at 331.

¶ 17 Judgment of sentence affirmed.

---

6. We note that the scientist, Katherine Colombo, did not testify that beyond a mathematical certainty appellant was the rapist. Rather, she testified to a reasonable degree of scientific certainty that appellant was the source of the DNA found at the rape scenes. (Notes of testimony, 10/13–18/00 at 401.) We find this distinction worth mentioning, first because a prosecutor's argument is not evidence, and second, because in this case, it is not even an accurate reflection of the scientist's testimony: a scientist would not offer an opinion beyond a mathematical certainty, as such a statement is an oxymoron.