J. S02006/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :      IN THE SUPERIOR COURT OF
:              PENNSYLVANIA
v.         :
:
TORRAL PHILEARIA SCOTT,      :        No. 1639 EDA 2016
:
Appellant    :

Appeal from the PCRA Order, May 2, 2016,
in the Court of Common Pleas of Lehigh County
Criminal Division at No. CP-39-CR-0000321-2013

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND MOULTON, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED FEBRUARY 22, 2017**

Torral Philearia Scott appeals from the order of May 2, 2016,[1] denying

her PCRA[2] petition.  After careful review, we affirm.

The trial court has summarized the procedural history of this matter as

follows:

> The relevant facts are as follows:  After a jury
> trial, [appellant] was found guilty on all charges
> proceeded to at trial on September 12, 2013.
> Specifically, [appellant] was found guilty of
> eleven (11) counts of Retail Theft (18 Pa.C.S.A.
> § 3929(a)(1)), two (2) counts of Attempted Retail
> Theft (18 Pa.C.S.A. § 3929(a)(1) [& 18 Pa.C.S.A.
> § 901(a)]), one (1) count of Organized Retail Theft
> (18 Pa.C.S.A. § 3929.3(a)), and one (1) count of

---

[1] The PCRA court's opinion and order were dated April 29, 2016; however,
they were not time-stamped and docketed until May 2, 2016.  We have
corrected the caption accordingly.

[2] Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

Conspiracy to Commit Organized Retail Theft (18 Pa.C.S.A. § 3929.3(a) [& 18 Pa.C.S.A. § 903(a)]).[3] Thereafter, on December 16, 2013, [appellant] was sentenced to an aggregate term of imprisonment in a state correctional institution of not less than six (6) years nor more than twelve and a half (12-½) years.[4] The sentences imposed were within the standard range of the guidelines. Then, on December 24, 2013, [appellant] filed a Notice of Appeal with the Superior Court of Pennsylvania. On February 4, 2015, [appellant] retained Vivian Zumas, Esquire, to represent her in the post trial appeal. Subsequently, on March 23, 2015, [appellant] discontinued and withdrew her appeal. Thereafter, on March 11, 2016, [appellant] filed a Motion for Post Conviction Collateral Relief. A hearing on [appellant]'s Motion for Post Conviction Collateral Relief was conducted on April 28, 2016. Then, on [May 2], 2016, this Court denied [appellant]'s requested relief. The within appeal followed on May 27, 2016.

On June [2], 2016, this Court instructed [appellant] to file of record and serve upon this Court a concise statement of errors complained of on appeal no later than June 22, 2016, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b). [Appellant] timely complied with said Order. However, all of the matters within [appellant]'s concise statement of errors complained of on appeal have been addressed by this Court's Opinion of [May 2], 2016. Consequently, this Court relies on said Opinion of [May 2], 2016, and incorporates it herein.

---

[3] As described in more detail below, the charges related to appellant's theft of ink cartridges and hard drives from numerous Target stores throughout eastern Pennsylvania over the course of five months.

[4] From our review of the record, appellant actually received an aggregate sentence of 6 to 16 years' incarceration. (Notes of testimony, sentencing, 12/4/13 at 20; amended sentencing order, 12/16/13 at 1; docket #43.) Appellant was also ordered to make restitution to Target in the amount of $28,307.17.

PCRA court opinion, 6/21/16 at 1-2.

Appellant has raised the following issues for this court's review, challenging the effectiveness of trial counsel, Jacob Gurwitz, Esq.:

> A. Attorney Gurwitz was ineffective for admitting to the elements of the crime of retail theft to the jury without authority to do so from [appellant].
>
> B. Attorney Gurwitz was ineffective for failing to consult with and interview eye witnesses prior to trial and ultimately [not] calling them to testify during trial.
>
> C. Attorney Gurwitz was ineffective for failing to consult with [a]ppellant prior to trial [regarding] any offers made by the District Attorney['s] Office and for failing to advise [a]ppellant [of] the risk she was assuming by having a trial.

Appellant's brief at 4.

Initially, we recite our standard of review:

> This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Halley***, 582 Pa. 164, 870 A.2d 795, 799 n. 2 (2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Commonwealth v. Carr***, 768 A.2d 1164, 1166 (Pa.Super. 2001).

***Commonwealth v. Turetsky***, 925 A.2d 876, 879 (Pa.Super. 2007),

***appeal denied***, 940 A.2d 365 (Pa. 2007).

> "To prevail on a claim alleging counsel's ineffectiveness, Appellant must demonstrate (1) that

the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness." *Commonwealth v. Wallace*, 555 Pa. 397, 407, 724 A.2d 916, 921 (1999), citing *Commonwealth v. Howard*, 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994) (other citation omitted). In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a "'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Kimball*, 555 Pa. 299, 308, 724 A.2d 326, 331 (1999), quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A "'[r]easonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.'" *Id.* at 309, 724 A.2d at 331, quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

*Commonwealth v. Jones*, 811 A.2d 1057, 1060 (Pa.Super. 2002), *appeal denied*, 832 A.2d 435 (Pa. 2003). "We presume counsel is effective and place upon Appellant the burden of proving otherwise. Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (citations omitted).

In her first issue on appeal, appellant argues that Attorney Gurwitz was ineffective for conceding to the jury that she was guilty of retail theft. Attorney Gurwitz's strategy, given the videotape surveillance evidence and inculpatory statements made by appellant, was to admit the lesser charges but try to obtain an acquittal on the greater charges of organized retail

theft/conspiracy to commit organized retail theft. Appellant argues that this was without her permission and violated her Fifth Amendment right against self-incrimination. No relief is due.

> In ***Commonwealth ex rel. Washington v. Maroney***, [427] Pa. [599], 235 A.2d 349 (1967), [***overruled on other grounds by Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973 (1987),] we held that before a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy [a]ctually employed was so unreasonable that no competent lawyer would have chosen it.

***Commonwealth v. Hill***, 235 A.2d 347, 349 (Pa. 1967). "If a reasonable basis exists for the particular course, the inquiry ends and counsel's performance is deemed constitutionally effective." ***Commonwealth v. Abdul-Salaam***, 808 A.2d 558, 561 (Pa. 2001), citing ***Commonwealth v. Derk***, 719 A.2d 262, 266 (Pa. 1998) (opinion in support of affirmance).

> Nor can a claim of ineffective assistance generally succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

***Commonwealth v. Miller***, 819 A.2d 504, 517 (Pa. 2002), ***cert. denied***, 540 U.S. 827 (2003) (citation omitted).

Joseph Perrins ("Perrins"), an asset protection team leader for Target, testified at trial and identified appellant on the videotape. (Notes of testimony 9/11/13 at 38, 54.) Perrins described in detail how appellant and

her accomplice would clear the shelves of ink cartridges and external hard drives, place the merchandise in a cart, and then leave the cart inside the store, near an exit. (*Id.* at 52-54.) At that point, a third individual would retrieve the cart and push it outside to a waiting car. (*Id.* at 54.) Perrins also testified that before an individual can be detained, certain criteria have to be met. (*Id.* at 57.) They are required to give a customer every opportunity to pay for the merchandise before leaving the store. (*Id.* at 58.)

Tyler Colon ("Colon"), a senior protection specialist for Target, testified that security is not permitted to chase a shoplifter outside of the store. (*Id.* at 81.) In addition, before any suspect can be apprehended, a checklist of five specific steps has to be satisfied, including concealment, continuous observation and failure to pay. (*Id.* at 82.) Colon explained that because these individuals traded off the merchandise from one to another, the requisite five steps were not going to be completed and store security would be unable to stop them. (*Id.*)

At the PCRA hearing, Attorney Gurwitz testified that this was damaging circumstantial evidence of appellant's intent:

> We saw the case differently. I have – I look at things in their – more than just the discrete actions. You have to look at the various interactions between one action and another at some times to see what the circumstances would dictate. When you have, essentially the same modeled conduct over 13 different incidents, if you have – it shows some level of organization, some level of sophistication.

> You have testimony relative to the – the security steps, the protocols where there were I believe it was five or six protocols, and at some critical number, three of them I believe it was, that they act. And you see consistently one factor or indicator is met; two factors. And then that person doesn't hit the critical number, and just walks out of the store, and then someone comes in, that suggests a level of coordination, and sophistication, and that you are; in fact, working in concert for all of a variety of criminal conspiracy charges relative to retail theft. So even if you could hypothetically beat the retail theft charge itself, you have still got the criminal conspiracy liability.

Notes of testimony, 4/28/16 at 33-34.

Attorney Gurwitz explained at the PCRA hearing that with the extensive video surveillance footage from multiple Target stores, the only plausible trial strategy was to try to paint appellant as a mere "pawn" in the operation, not the "boss" of the shoplifting ring. In this way, Attorney Gurwitz was hoping to get appellant acquitted of the more serious second-degree felony charges of organized retail theft.

Appellant was adamant that she did not commit retail theft where she did not actually take the merchandise out of the store. However, as detailed above by Perrins and Colon, the ***modus operandi*** of the group was that appellant and another woman would load up the cart with ink cartridges and hard drives, and then leave it near an exit where a third individual would push it outside the store. Appellant's defense was simply untenable in light of the video evidence. Attorney Gurwitz explained:

We discussed various aspects of the case. Ultimately [appellant] and I both saw the case very differently. I think that was evident from the trial transcript from the very beginning when she seemed to be – to have cold feet the day of the trial. Ultimately, my concern in this kind of case where you have that much video evidence, and you have the [security] personnel that were going to be testifying, and that these – this evidence was going to be admissible, that the retail thefts at a fundamental level, and or conspiracy to retail thefts, end up being a foregone conclusion to the extent that there is just too much circumstantial evidence to support that. [Appellant]'s view from our conversations was – not getting into the issue of circumstantial evidence, but that she – that factually, she herself did not push any evidence out of the cart, or take it out of the store herself; that circumstantial evidence that would potentially link her to other people didn't matter, she didn't herself take anything out of the store, and didn't think that that made her culpable.

*Id.* at 14-15.

So that you have people loading things up into a cart. You have got a bin. You put a top on the bin. You push it to a particular point, but they don't go anywhere close to the point of purchase. They end up exiting the store before there is any kind of interaction, and then somebody else picks it up from there. And that was evident from the video. So I see that as strong circumstantial evidence. [Appellant] did not see it as such. My concern for her legal interest at the point that the Commonwealth's offer for one charge for a period of time, which was not unfair according to the guidelines, once we were headed for trial, the only effectual strategy that I could see was on the organized retail theft, and criminal conspiracy to organized retail theft, the F-2's, the top, I guess, two charges, or the highest tier charges, because the presentation that I believed that is accurate, is that she was a pawn in a grand game, and that she

> herself was not a manager, not promoter, not – That she herself was not instrumental in making this thing go from an organizational perspective, and that her only true culpability would be retail theft. She saw the case differently in that I didn't commit any retail thefts. I didn't commit any conspiracy. I didn't engage in organized retail theft, and a deny and disclaim strategy, versus the one that I thought was far more plausible given the nature of the evidence.

*Id.* at 15-17.

Clearly, there was ample evidence of appellant's guilt, including eyewitness testimony from Target security personnel and videotape footage. On October 13, 2012, Perrins observed appellant and her cohorts remove merchandise from the Easton Target. (Notes of testimony, 9/11/13 at 58-61.) Perrins contacted Colon, who worked at the Airport Road location. (*Id.* at 75, 98.) Shortly thereafter, appellant and another individual entered Colon's location and began loading hard drives and ink cartridges into their cart. (*Id.* at 101.) Colon contacted state police who indicated they had a trooper in an adjacent parking lot and to let them know when the suspects exited the store. (*Id.* at 102.) Subsequently, when appellant was stopped by state police on the evening of October 13, 2012, they recovered the stolen merchandise in her trunk. (Notes of testimony, 9/12/13 at 53-54.) Police also found bags lined with tin foil, designed to defeat the store's security devices. (*Id.* at 57.) Appellant admitted to stealing from Target stores since August of 2012. (*Id.* at 62.) Appellant also admitted that she directed Cameo Scott ("Scott"), the front right passenger of the vehicle, to

push the cart out of the store. (*Id.* at 62-63.) Appellant indicated that they took the stolen merchandise to Brooklyn, New York, to an individual named "D." (*Id.* at 63.)

Clearly, given the overwhelming evidence against appellant, Attorney Gurwitz's strategy of conceding guilt on the third-degree felony retail theft charges and attempting to persuade the jury that appellant was innocent of the second-degree felony charges of organized retail theft and criminal conspiracy to commit organized retail theft, was a sound one. Appellant's notion that she could not be convicted of retail theft or attempt to commit retail theft because she did not actually push the cart outside of the store was not based in law. She was clearly acting in concert with her accomplices, as depicted on the surveillance tapes. Appellant's only hope was to convince the jury that she did not organize, coordinate, control or supervise the activities of an organized retail theft enterprise, as required by the statute. 18 Pa.C.S.A. § 3929.3(a). Attorney Gurwitz attempted to convince the jury that she was a mere pawn and the unidentified individuals in New York were the masterminds of the operation. Appellant obviously disagreed with Attorney Gurwitz's strategy in this regard, but it was a sound one based on the evidence. There is no merit here.

Next, appellant claims that Attorney Gurwitz was ineffective for failing to investigate two potential witnesses, Scott and Charis Bynoe ("Bynoe"). (Appellant's brief at 11-12.) According to appellant, both Scott and Bynoe

submitted affidavits prior to trial and Attorney Gurwitz should have called them as witnesses. (*Id.* at 12.) Appellant argues that their testimony would have likely changed the outcome of the trial. (*Id.*)

> To establish ineffectiveness for failure to call a witness, Appellant must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of the testimony prejudiced Appellant so as to deny him a fair trial. A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness.

*Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa.Super. 2004), *appeal denied*, 860 A.2d 123 (Pa. 2004) (citations omitted).

Scott, appellant's niece, was a co-conspirator and entered into an Accelerated Rehabilitative Disposition ("ARD") program for receiving stolen property. (Notes of testimony, 4/28/16 at 59.) Scott testified at the PCRA hearing that she would have been willing to testify at appellant's trial that appellant had no involvement whatsoever in the retail thefts. (*Id.* at 61-62.) However, in her pre-sentence investigation report, appellant admitted that she convinced Scott to participate in the thefts. (*Id.* at 63.) Scott also admitted that they had stolen items from the Easton Target. (*Id.* at 64-65.) Therefore, her proposed trial testimony would be in contradiction to the established facts.

Attorney Gurwitz pointed out that as a co-conspirator, it would not have served appellant's interests to put Scott on the stand. (*Id.* at 24-25.) Scott was seen on camera pushing the cart out of the Easton Target. As the PCRA court found, Scott was a corrupt and polluted source and Attorney Gurwitz had a reasonable basis for not calling her as a witness. (*Id.* at 71.) The PCRA court also found Scott was not a credible witness. (*Id.* at 71.)

Regarding Bynoe, appellant did not present her as a witness at the PCRA hearing, nor did appellant submit an affidavit. (*Id.* at 72-73.) There is no evidence as to what Bynoe would have testified to at appellant's trial. (*Id.*) Therefore, appellant cannot possibly show how she was prejudiced by Attorney Gurwitz's failure to call Bynoe as a witness. (*Id.*) Furthermore, Bynoe was also a passenger in the vehicle when it was stopped by police, and Attorney Gurwitz reasonably believed it was risky to use her as a witness. (PCRA court opinion, 5/2/16 at 8.)

Appellant also argues that because Scott and Bynoe were not called as witnesses, she was forced to testify in her own defense. (Appellant's brief at 11-13.) Appellant theorizes that if she did not testify, she would have been found not guilty of all charges. (*Id.*)

From our review of the record, this issue was not raised in appellant's PCRA petition, nor was it raised in her Rule 1925(b) statement. (Docket #53, #59.) As such, it is waived. ***See Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa.Super. 2011) ("It is well-settled that issues not raised

in a PCRA petition cannot be considered on appeal." (quotation marks and citations omitted)); 42 Pa.C.S.A. § 9544(b); Pa.R.A.P. 1925(b)(4)(vii). **See also Commonwealth v. Marion**, 981 A.2d 230, 237 (Pa.Super. 2009), **appeal denied**, 990 A.2d 729 (Pa. 2010) ("to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Rule] 1925. Any issues not raised in a [Rule] 1925(b) statement will be deemed waived." (citations omitted)).

At any rate, appellant never testified at the PCRA hearing that Attorney Gurwitz forced her to testify. In fact, there was an extensive colloquy conducted at trial regarding appellant's decision to testify and her prior criminal record which included **crimen falsi**. (Notes of testimony, 9/12/13 at 115-117.)

In her third and final issue on appeal, appellant alleges that Attorney Gurwitz failed to communicate a plea offer to appellant. According to appellant, her lack of understanding of the Commonwealth's plea offer was what led her to reject it. (Appellant's brief at 13.)

> Generally, counsel has a duty to communicate plea bargains to his client, as well as to explain the advantages and disadvantages of the offer. Failure to do so may be considered ineffectiveness of counsel if the defendant is sentenced to a longer prison term than the term he would have accepted under the plea bargain. Where the PCRA court's determination of credibility is supported by the record, we will not disturb it on appeal.

- 13 -

*Commonwealth v. Marinez*, 777 A.2d 1121, 1124 (Pa.Super. 2001), *appeal denied*, 788 A.2d 374 (Pa. 2001) (citations omitted).

Appellant's claim is belied by the record. Attorney Gurwitz testified that he communicated the Commonwealth's offer of a minimum sentence of no more than two years' incarceration and appellant rejected it. (Notes of testimony, 4/28/16 at 18, 34-35.) Attorney Gurwitz testified that he thought the offer was reasonable, but appellant insisted on going to trial. (*Id.* at 18-19.) Appellant firmly believed that she could not be found guilty because she did not actually push the cart out of the door. (*Id.* at 34.) In addition, despite her extensive prior record, appellant had not done much jail time and was unwilling to agree to an offer of a minimum of up to two years' imprisonment. (*Id.* at 34-35.) The PCRA court, which also presided over appellant's jury trial, found that she was fully apprised of the plea offer and made an informed decision to go to trial:

> Your client, much different than the tearful client she presents today, was nasty to her lawyer, did not listen to a word that he said in terms of advice, and she was hell bent on her course of action. She knew full well, because we had numerous conversations before trial. She understood what the plea agreement was, and if she had any questions, I was right in front of her to ask. She wanted her trial.

*Id.* at 70. As the PCRA court stated in its opinion and order denying appellant PCRA relief:

> Furthermore, during the negotiation process, Attorney Gurwitz had conveyed to [appellant] the plea offer that was extended to her by the

> Commonwealth. In particular, the agreement entailed pleading guilty to Organized Retailed [sic] Theft, with a cap of the minimum sentence at two (2) years. Despite being advised to accept the offer by her attorney, [appellant] refused to accept the offer. Indeed, [appellant] believed that she did not commit a crime and dispelled all guilt in the matter.

PCRA court opinion, 5/2/16 at 5-6. The PCRA court's findings in this regard are supported by the record and will not be disturbed on appeal. This claim fails.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2017