J-S07008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEANDRE PAYTON JONES, JR. | : | |
| | : | |
| Appellant | : | No. 631 WDA 2021 |

Appeal from the PCRA Order Entered April 20, 2021
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000621-2016

BEFORE:  OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                **FILED:  May 3, 2022**

Appellant, Deandre Payton Jones, Jr., appeals from the order entered on April 20, 2021, which denied his petition filed pursuant to the Post-Conviction Relief Act.[1]  We affirm.

A prior panel of this Court summarized the facts of Appellant's underlying convictions for second-degree murder, robbery, and conspiracy to commit robbery[2] as follows:

> On September 29, 2014, Michael Eades, Jr., drove Appellant, Kevin King, and Stanley Boynton from Altoona to [the victim's]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] 18 Pa.C.S.A. §§ 2502(B), 3701(A)(1)(ii), and 903, respectively.  Appellant was also charged with conspiracy to commit murder, however the jury acquitted him of that charge.

apartment in Blairsville. Eades told the others that he was going to pick up some cash that [the victim] owed to him in connection with their work in the illicit drug trade.[2] While *en route*, Eades told them all to turn off their cell phones.

When they arrived at the victim's apartment, Eades told the victim he was there for the money he owed him and proceeded to gather up money that was laying around the living room in banded bundles. An argument ensued between Eades and the victim, and King pulled out a gun, pointing it at the victim while demanding that he give Eades the money he owed him. The victim gave Eades money that was under the cushion of a chair. King and Eades then directed Appellant and Boynton to get cash from the bedroom. Appellant found the money in the bedroom, put it in a bag, and handed the bag to Boynton. Boynton and Appellant then returned to the living room, and Eades directed Appellant to tie up the victim with an extension cord while the men gathered more money from around the living room and put it into the bag. After Appellant tied the victim's ankles with an extension cord and his wrists with a black USB cable, as ordered by Eades, he tried to remove his DNA from the cords with his saliva.

Soon thereafter, King grabbed a sword from the victim's collection held in a bin in the living room and began stabbing the victim. Boynton ran out of the house with the bag of money and jumped into the back of the car. Eades directed Appellant to go find Boynton, and King and Eades continued stabbing the victim.

King and Eades shortly thereafter returned to Eades's vehicle where Appellant and Boynton were waiting. They all drove back to Altoona, stopping at a Sheetz in Ebensburg along the way. When they got to King's apartment, Eades and King split up the money, giving Appellant $10,000[.00].

Police officers found the victim's body three days later lying on his living room floor. An electric cord bound the victim's feet, another cord bound his hands, and a sock was in his mouth. The body had nearly 40 stab wounds, and a sword impaled the victim's skull to the floor.

---

[2] King and Eades are brothers; Appellant is [their] cousin and was visiting from Baltimore at the time. Eades and the victim were allegedly best friends.

After extensive investigation by the Pennsylvania State Police, the Commonwealth charged the four men [in connection with the incident]. With respect to Appellant, the Commonwealth charged him with second-degree murder, conspiracy to commit criminal homicide, robbery, and conspiracy to commit robbery. [The trial court appointed trial counsel to represent Appellant.]

On August 21, 2017, Appellant proceeded to a [multi-day] jury trial, where the Commonwealth presented testimony from numerous police officers, investigators, forensic experts, and Boynton. The Commonwealth did not call King as a witness[, however Appellant called King to testify on his behalf concerning Appellant's purported unwillingness to be a part of the incident. King also revealed that, as part of his plea agreement, he agreed to testify against Eades but not against Appellant].

Appellant testified on his own behalf. He stated that he has known Eades and King his entire life and that they could be violent men, so he was afraid of them when they got upset. He stated that he did not know during the drive to Blairsville that they were going to rob the victim. He stated that because he was afraid of Eades, he turned off his cell phone, gathered money in the victim's apartment, and tied up the victim when Eades told him to do so. He also said that, although he heard commotion in the living room while he was collecting money from the bedroom, he did not see the victim getting stabbed before Eades told him to leave the house to find Boynton. He stated that he took the money from Eades after the robbery because Eades and King gave it to him [to make him a participant in] the robbery. Appellant also testified that he did not know about the victim's death until three days later when he ran into Eades's mother in a mall in Baltimore.

***Commonwealth v. Jones***, 2019 WL 1096542 at *1-*2 (Pa. Super. 2019) (unpublished memorandum) (record citation, some footnotes, and extraneous capitalization omitted). The jury convicted Appellant of the aforementioned charges, and on September 8, 2017, the trial court sentenced Appellant to a term of incarceration of life without the possibility of parole. This Court affirmed Appellant's judgment of sentence on March 3, 2019, and our

Supreme Court denied review on September 17, 2019. ***Jones***, 2019 WL 1096542 at \*9, *appeal denied*, 217 A.3d 1210 (Pa. 2019).

Appellant, through counsel, filed the instant timely petition, his first, on September 16, 2020.[3] Within his petition, Appellant asserted that his trial counsel was ineffective for failing to request a curative instruction or have certain testimony about his incarceration stricken from the record. The PCRA court held an evidentiary hearing on April 1, 2021, at which trial counsel testified. On April 20, 2021, the PCRA court denied Appellant's petition. This appeal followed.[4]

Appellant raises the following issue for our review:

> Did the PCRA court commit an error of law by finding that [trial counsel] was not ineffective in the course of his representation of [Appellant] during [Appellant's] jury trial?

Appellant's Brief at 5 (extraneous capitalization omitted).

Our standard of review for challenges to the denial and dismissal of petitions filed pursuant to the PCRA is well-settled.

> We must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the

---

[3] Appellant's PCRA counsel in the case *sub judice* also represented him on his direct appeal and at his preliminary hearing.

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

Appellant claims that his trial counsel was ineffective when, after co-defendant Boynton testified that Appellant was in Cambria County Jail, counsel requested a sidebar but then refused the trial court's offer to give a curative instruction or strike Boynton's non-responsive answer. Appellant's Brief at 16. Specifically, the following exchange occurred during trial counsel's cross-examination of Boynton:

Q: Getting back to my point, you didn't tell the truth?

A: That first interview I was afraid to even say I was involved.

Q: Then you have a conversation with them, Kevin King after that?

A: After what?

Q: After that first interview?

A: I don't know. I probably did, no, before that first interview I was told to, you know, don't say anything.

Q: Yeah, but after that first interview you talked to Kevin King at the jail; didn't you?

A: What jail?

Q: Whatever jail you were housed in at the time and Kevin told you Mike lied about the story?

A: When I first got arrested in Indiana, yes.

Q: Okay. So you talked to Kevin there?

A:  Yes.

Q:  Then you were transported down to Cambria County?

A:  Yes.

Q:  With Kevin?

A:  No.

Q:  Not in the same car but he ended up in the same jail?

A:  No.  I was there with [Appellant].

N.T. Jury Trial,[5] 8/21/17, at 68-69.  At that point, trial counsel requested a sidebar:

Trial Counsel: If I may approach?

Court: Yes.

[At sidebar, outside the jury's hearing]

Trial Counsel: Judge, that wasn't in response to my question.  He made a reference to my guy being in jail and I am going to move for a mistrial.  I don't think a curative instruction would help.

Commonwealth: I think he opened the door to that.  He was asking who he was housed with.

Trial Counsel: I said you were housed with King; weren't you.

Commonwealth: He said, he answered, I think the defense opened the door to that line of questioning.

Court: Okay.  I am going to deny the motion for mistrial and do you want me to try to give a curative inruction?

Trial Counsel: I think that is going to call more attention to it.  I would rather not.

_____

[5] The notes of testimony for Appellant's jury trial, spanning four days, is contained within one volume.

Court: Would you want me to tell them I am striking that testimony?

Trial Counsel: I don't think, your Honor.

Court: All right. Okay. I am going to deny the motion.

*Id.* at 69-70. At the conclusion of the sidebar, trial counsel continued his cross-examination, specifically targeting Boynton's untruthfulness in his interviews with police. *See id.* at 70-72.

In Appellant's view, Boynton's reference to Appellant being in a different county jail created a perception before the jury that Appellant was facing separate criminal charges and an impression of a general criminal disposition. *Id.* at 20. Appellant argues that trial counsel's sidebar confused the jury and his decision to decline both a curative instruction and the court's offer to strike the testimony "amplified the prejudice" against Appellant. *Id.* at 19.

Counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the] appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that[] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

*Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations and quotation marks omitted).

- 7 -

A claim has arguable merit where the factual averments, if accurate, could establish [grounds] for relief. **See Commonwealth v. Jones**, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, [whether an unchosen alternative] offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

**Commonwealth v. Stewart**, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted). If a claim fails under any necessary element of the applicable test, the court may proceed to that element first. **Commonwealth v. Fears**, 86 A.3d 795, 804 (Pa. 2014).

Here, upon review, we conclude that Appellant cannot demonstrate that he was prejudiced by the challenged statement. **See Commonwealth v. Jones**, 811 A.2d 1057, 1062 (Pa. Super. 2002) (where it is clear that an appellant fails to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone without a determination on the first two prongs). The Commonwealth presented a breadth of evidence, including the testimony of co-defendant Boynton and

several investigating officers, Appellant's DNA found on the extension cord used to bind the victim, and cell phone records and various video surveillance recordings placing Appellant at the scene with Eades, King, and Boynton. Moreover, the jury considered Appellant's own inculpatory statements in his trial testimony and in recorded interviews with investigators wherein Appellant admitted to: (1) his understanding that they traveled to the victim's house for the purpose of getting drug money that the victim owed to Eades; (2) Appellant's personal actions in furtherance of the robbery in taking money from the victim's home, tying the victim with cords, and attempting to remove his DNA from the bindings; (3) Appellant directing Boynton not to say anything about the incident; (4) his later receipt and use of $10,000.00 of the stolen money; and (5) his admitted knowledge both during and after the incident that a robbery was committed in which he was a part. *See*, *e.g.*, *id.* at 313-323. Besides conclusory statements, Appellant fails to articulate how he was prejudiced by a single passing reference to his alleged incarceration in a different county jail, made on the first of a multi-day trial and during an exchange demonstrating a witness's untruthfulness, particularly in light of the overwhelming evidence of guilt presented by the Commonwealth.[6]

_____

[6] The trial court also opined, within its opinion denying Appellant's post-trial motion, that Appellant was not prejudiced by Boynton's statement. *See* Trial Court Opinion, 2/12/18, at 5-6. Specifically, the trial court concluded, "[t]he testimony elicited showed that both co-defendants, King and Boynton[,] were incarcerated. It would not be unreasonable for the jury to conclude that all

Consequently, Appellant's ineffective assistance of counsel claim fails and the PCRA court properly denied the instant petition.[7]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2022

---

the defendants charged with [h]omicide were incarcerated on those charges." *Id.* at 6.

[7] Appellant also failed to establish that trial counsel lacked a reasonable basis for his actions. At issue is one single reference to Appellant's incarceration at a separate county jail in the context of a multiple day jury trial involving four perpetrators and a victim who was killed for owing money to an acquaintance within the drug trading business. At the PCRA evidentiary hearing, trial counsel explained that, after his motion for a mistrial was denied, he refused the trial court's offer of a curative instruction or to strike the testimony because he did not want to call more attention to the statement. Counsel also explained that he considered further references to Appellant's incarceration throughout the trial as a basis for appeal. *See* Trial Court Opinion, 4/20/21, at 3. As the trial court opined, "[t]o request a curative instruction or alternatively seek to have the testimony stricken would only highlight it for the jurors. Attempting to limit the attention given to the statement was a strategic, tactical decision in providing a defense, and [trial counsel] cannot be deemed ineffective on that basis." *Id.* at 4; *see also Commonwealth v. Spotz*, 870 A.2d 822, 832 (Pa. 2005) ("Objections sometimes highlight the issue for the jury, and curative instructions always do."). Appellant cannot demonstrate that **no** competent counsel would have chosen trial counsel's course of action. *Stewart*, *supra*.